COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-060-CR

 

 

DAVID R. POYNTER                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 297TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                            Introduction








Appellant David R. Poynter appeals his conviction
for aggravated assault of a public servant. 
See Tex. Penal Code Ann. '' 22.01(a)(2),
22.02(a)(2), (b)(2)(B) (Vernon Supp. 2008). 
In four related points, he asserts that the evidence admitted at his
trial is legally and factually insufficient to support his conviction.  We affirm.

                                        Background
Facts

On December 22, 2005, Fort Worth Police
Department Officer Jerry Cedillo received an anonymous tip regarding the
presence of methamphetamine at a motel room in Saginaw.  He arrived at the motel at approximately 8:00
p.m., and he saw a Mercedes-Benz car parked in front of the suspected motel
room.  After another Fort Worth officer
(Sergeant Terry Porter) joined him at the motel, Officer Cedillo saw Poynter
leave the motel room and get in the car.

Officer Cedillo and Sergeant Porter, in unmarked
vehicles, followed Poynter as he began to travel on Interstate Highway 820 (IH
820).  Sergeant Porter saw Poynter
commit traffic violations; Sergeant Porter then requested that a marked police
vehicle join Officer Cedillo and him to assist with a traffic stop as Poynter
continued to travel several more miles. 
Officer Kirk Massey heard the request and found Poynter=s car;
Officer John David Riggall, in his own marked patrol car, joined in Officer
Massey=s
pursuit; Officer Massey turned on his patrol lights, but Poynter did not stop.[2]








Poynter reversed his direction on IH 820;[3]
while traveling at about eighty miles per hour, he then exited towards the
motel with Officer Massey and Officer Riggall following him.  Poynter returned to IH 820,[4]
while continuing to evade the police (with Sergeant H.G. Baxter joining the
pursuit).  Eventually, at an exit off of
IH 820, an assisting officer placed a spike strip; Poynter ran over the strip,
which deflated one of his tires.  Poynter
reduced his speed, but he did not stop.








Poynter returned to the motel and circled its
parking lot.  He then left the parking
lot, eventually returned to the motel again, and left the parking lot another
time; while doing so, he struck Sergeant Baxter=s marked
patrol car.[5]  Poynter again went to IH 820. 








Fort Worth Lieutenant Edmund Daniels joined the
pursuit; by driving parallel to Poynter, he prevented Poynter from crossing a median,
which would have allowed him to unsafely drive in opposite lanes of
traffic.  As Poynter moved back onto the
highway to drive in the correct direction of traffic, Officer Riggall, standing
on the outside shoulder of the highway (between the access road and the
highway), attempted to set up another spike strip to flatten Poynter=s other
tires.  Poynter traveled across three
lanes of traffic, toward the shoulder of the highway, directly to where Officer
Riggall (who was wearing his uniform) was standing.  Officer Riggall ran off the shoulder of the
highway and into a ditch to avoid being struck by Poynter=s car.[6]  Lieutenant Daniels pinned Poynter=s car
against a guardrail, and the pursuit finally ended.[7]

In April 2006, a Tarrant County grand jury
indicted Poynter; the indictment alleged that Poynter committed aggravated
assault on a public servant by intentionally or knowingly threatening bodily
injury to Officer Riggall while using his car as a deadly weapon.[8]  The indictment also contained a habitual
offender paragraph that alleged that Poynter had previously been convicted of
two other felony offenses.








The trial court appointed Poynter=s
counsel and the parties filed various pretrial documents, then Poynter=s trial
began with his not guilty plea.  After
the parties concluded voir dire and they submitted their opening arguments, the
State presented its case, which consisted of testimony from the officers who
had been involved in Poynter=s
chase.  Poynter did not call any
witnesses.  After the court read its
charge to the jury and both sides presented closing arguments,[9]
the jury found Poynter guilty.  After
hearing evidence regarding Poynter=s
punishment, the jury sentenced him to life in prison.

                         Standards
of Review and Applicable Law

In his four points, Poynter contends that the
evidence presented at trial (as summarized above) is not legally or factually
sufficient to support his conviction.

Legal sufficiency








In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007). 
This standard gives full play to the responsibility of the trier of fact
to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Clayton, 235 S.W.3d at 778.

The trier of fact is the sole judge of the weight
and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).








Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.  In determining the legal sufficiency of the
evidence to show a defendant=s
intent, and faced with a record that supports conflicting inferences, we Amust
presumeCeven if
it does not affirmatively appear in the recordCthat the
trier of fact resolved any such conflict in favor of the prosecution, and must
defer to that resolution.@ 
Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

Factual sufficiency

When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v.
State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Lancon v. State, 253
S.W.3d 699, 704B05 (Tex. Crim. App. 2008); Watson,
204 S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000).

Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.








An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports
the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  A factual sufficiency
review of circumstantial evidence is the same as a review of direct
evidence.  King v. State, 29
S.W.3d 556, 565 (Tex. Crim. App. 2000); Kutzner v. State, 994 S.W.2d
180, 184 (Tex. Crim. App. 1999) (reasoning that A[c]ircumstantial
evidence, by itself, may be enough to support the jury=s
verdict@).

The elements of Poynter=s crime

The jury convicted Poynter of aggravated assault
on a public servant.  Under the
indictment in this case, that crime required the State to prove that Poynter
intentionally or knowingly threatened Officer Riggall with imminent bodily
injury from a deadly weapon while knowing that Officer Riggall was a public
servant and while Officer Riggall was lawfully discharging his official
duty.  Dobbins v. State, 228
S.W.3d 761, 764 (Tex. App.CHouston
[14th Dist.] 2007, pet. dism=d); Dunklin
v. State, 194 S.W.3d 14, 21B22 (Tex.
App.CTyler
2006, no pet.); see Tex. Penal Code Ann. ''
22.01(a)(2), 22.02(a)(2), (b)(2)(B).

                                               Analysis








Poynter challenges the evidence supporting the
jury=s
implicit findings that he intentionally or knowingly threatened Officer Riggall
and that he used a deadly weapon; he does not challenge that Officer Riggall is
a public servant or that Officer Riggall was lawfully discharging his duty
during the incident described above. 

The sufficiency of the
evidence supporting Poynter=s intentional or knowing threat of Officer
Riggall

 

In his first and second points, Poynter
respectively challenges the legal and factual sufficiency of the evidence
supporting that he intentionally or knowingly threatened Officer Riggall.  He contends that his conduct in this case was
Amisinterpreted
because he did not intend to hurt Officer Riggall.  Instead, [he] was attempting to evade
arrest.  The evidence of Officer Riggall=s fear .
. . is not sufficient to establish [Poynter=s]
intent to threaten.@ 
Poynter acted intentionally by threatening Officer Riggall if it was his
conscious objective or desire to do so; Poynter acted knowingly if he was aware
that such a threat would occur.  Tex.
Penal Code Ann. ' 6.03(a), (b) (Vernon
2003).








The intentional or knowing state of mind of a
defendant may be proved without direct evidence; such a state of mind may be Ainferred
from circumstantial evidence such as [the defendant=s] acts,
words, [or] conduct.@ 
Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); see
Mashburn v. State, 272 S.W.3d 1, 14 (Tex. App.CFort
Worth 2008, pet. struck); Krause v. State, 243 S.W.3d 95, 111 (Tex. App.CHouston
[1st Dist.] 2007, pet. ref=d)
(explaining that A[p]roof of a culpable mental
state almost invariably depends upon circumstantial evidence@).  When reviewing the jury=s
implicit decision to infer that Poynter intentionally or knowingly threatened
Officer Riggall, it is Anot necessary that [we] find to
[our] own satisfaction that such was [his] intent.  It is enough for us to find that >any=
rational jury could have so found beyond a reasonable doubt.@  Brimage v. State, 918 S.W.2d 466, 476
(Tex. Crim. App. 1994).

Applying these standards, the evidence in the
record is legally sufficient to show that Poynter intentionally or knowingly
threatened Officer Riggall by driving at him. 
The uncontradicted testimony of three eyewitnesses indicated that
Poynter 

$                  
Amoved from the center
lane all the way over to the other lane and onto the shoulder, and Officer
Riggall ran . . . to keep from being struck@ (Sergeant Randy Whisenhunt=s testimony);

 

$                  
moved Aright across all three
lanes of traffic toward the shoulder,@ where he A[w]ent directly for Officer Riggall, drove
directly towards him,@ to the extent that
Officer Riggall Ajumped out of the roadway@ (Lieutenant Daniels=s testimony); and

 

$                  
changed direction so that he was driving Aacross the outside lane
towards@ Officer Riggall (Officer
Riggall=s testimony).

 








In fact, while observing Poynter=s
maneuver, Sergeant Whisenhunt yelled to Officer Riggall, A[Poynter=s] going
to try and hit you.@ 
The testimony of two of the three officers indicated that before Poynter
made his move, he had been maintaining a single lane of traffic, and he had
been successfully controlling his car. 
The evidence established that after almost hitting Officer Riggall with
his car, Poynter simply moved back to the center lane of the highway and
continued eastbound.  Finally, the jury
heard testimony regarding Poynter=s
willingness to make contact with his vehicleCjust a
few minutes before driving at Officer Riggall, Poynter struck Sergeant Baxter=s patrol
car.

Viewing this evidence and the other evidence
summarized above in the light most favorable to the jury=s
verdict and deferring to the jury=s
implicit inference about the weight of the evidence, we hold that the evidence
sufficiently indicates Poynter=s intent
or knowledge regarding his threat to cause imminent harm to Officer=
Riggall.  We therefore overrule his first
point.

We hold that the evidence is likewise sufficient
when viewed according to factual sufficiency standards.  Because there was no evidence presented at
trial conflicting with the evidence described above, the jury=s
determination about Poynter=s state
of mind could only be reversed for factual insufficiency if the evidence was so
weak that the determination was clearly wrong and manifestly unjust.  See Lancon, 253 S.W.3d at 705.  We cannot conclude that standard has been
satisfied.








First, although Poynter has offered possible
reasons for driving at Officer Riggall[10]
other than intentionally or knowingly threatening him,[11]
he presented no evidence at trial to support those reasons.  Next, Poynter=s
assertion that he was trying only to evade the officers who were pursuing him
when he drove at Officer Riggall does not make sense because there is nothing
in the record indicating that Poynter could not have continued his progression
through the center lane of the highway as he did before and after his diversion
in Officer Riggall=s direction.  Finally, even if there was evidence in the
record that supported Poynter=s
explanation of his conduct, the jury was free to either believe or disbelieve
that conflicting theory.  See Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001) (stating that it Ais a
jury, not a reviewing court, that accepts or rejects reasonably equal competing
theories@); Gregory
v. State, 159 S.W.3d 254, 261 (Tex. App.CBeaumont
2005, pet. ref=d).








Affording the jury=s
decision appropriate deference under the authority cited above, we conclude
that the evidence is factually sufficient to show that Poynter intentionally or
knowingly threatened Officer Riggall. 
Therefore, we overrule Poynter=s second
point.

The sufficiency of the
evidence supporting Poynter=s use of his car as a deadly weapon

 

In his third and fourth points, Poynter
respectively challenges the legal and factual sufficiency of the evidence
indicating that he used his car as a deadly weapon.  He contends that he did not drive his car in
a manner clearly endangering Officer Riggall=s life.

A deadly weapon is Aanything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.@ 
Tex. Penal Code Ann. ' 1.07(a)(17)(b)
(Vernon Supp. 2008); see Butler v. State, 928 S.W.2d 286, 288 (Tex. App.CFort
Worth 1996, pet. ref=d).  A car can be a deadly weapon.  Butler, 928 S.W.2d at 288; see Cates
v. State, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (explaining that an Aautomobile
can be a deadly weapon if it is driven so as to endanger lives@); Davis
v. State, 964 S.W.2d 352, 354 (Tex. App.CFort
Worth 1998, no pet.) (holding that the defendant=s
driving his car in oncoming lanes of traffic qualified the car as a deadly
weapon).








Applying the standards set forth above, we hold
that the evidence admitted at Poynter=s trial
is legally sufficient to show that he used his car as a deadly weapon.  As described above, three eyewitnesses
testified that Poynter drove his car directly at Officer Riggall and that
Officer Riggall had to quickly evade Poynter=s car to
prevent being struck.  Lieutenant Daniels
testified that Officer Riggall was Avery
much@ in
danger of being hurt; he also opined that Poynter=s car
was capable of causing death or serious bodily injury.  Sergeant Whisenhunt also testified that
Poynter could have caused Officer Riggall to die or sustain serious bodily
injuries.  Because this evidence could
have allowed a rational jury to determine beyond a reasonable doubt that
Poynter used his car as a deadly weapon as defined above, it is legally
sufficient.  Clayton, 235 S.W.3d
at 778.  Thus, we overrule Poynter=s third
point.








The evidence is also sufficient when considered
under the factual sufficiency standard because it is not so weak that the jury=s
determination was clearly wrong and manifestly unjust.  Lancon, 253 S.W.3d at 704.  Poynter did not present any evidence to
contradict the opinions and observations of the eyewitnesses that his driving
at Officer Riggall endangered Officer Riggall=s
life.  Thus, the jury=s
determination that Poynter used his car as a deadly weapon was based on
factually sufficient evidence.  See
Cates, 102 S.W.3d at 738; see also Tarin v. State, No. 08‑02‑00202‑CR,
2004 WL 362601, at *4 (Tex. App.CEl Paso
Feb. 25, 2004, no pet.) (mem. op., not designated for publication) (holding
that acceleration of a motorcycle at an officer, coupled with testimony that
the motorcycle was capable of causing death or serious bodily injury, when the
defendant Adid not provide evidence
diminishing the impact of the State=s
evidence,@ was factually sufficient to
qualify the motorcycle as a deadly weapon in an aggravated assault case).  We therefore overrule Poynter=s fourth
point.

                                             Conclusion

Having overruled all of Poynter=s
points, we affirm the trial court=s
judgment.

 

TERRIE
LIVINGSTON    

JUSTICE

 

 

PANEL:  CAYCE, C.J.; LIVINGSTON, and DAUPHINOT, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  April 30, 2009











[1]See Tex. R. App. P. 47.4.





[2]At that time, Officer
Cedillo returned to the motel to prevent anyone from destroying evidence
there.  He eventually entered Poynter=s motel room, where he
discovered used syringes.





[3]When Poynter reversed
direction, Officer Massey turned on his patrol car=s sirens.





[4]At some point, a police
helicopter followed the officers= chase of Poynter.





[5]Sergeant Baxter had
parked the patrol car in response to Poynter=s temporarily stopping his own car.  Officer Massey and Officer Riggall had moved
their patrol cars to block one of the motel=s exits. 
Sergeant Baxter testified, 

 

I had opened the door and
was literally in the process of starting to put my foot out when I heard
commotion and I looked up and saw the vehicle coming directly towards me. 

 

. . . .

 

I slammed the door . . .
and just braced myself for impact because it was obvious he was fixing to ram
me.

 

Sergeant Baxter sustained
neck injuries requiring treatment for two months; his patrol car had to be
towed from the scene.





[6]Officer Riggall stated
that Poynter went from the center lane of the highway to drive directly in his
direction at about thirty miles an hour. 
He explained, 

 

[I tried] to throw [the
spike strip] as far as I could out there because [Poynter had] been driving
back across the lane.  I looked up and I
saw that his headlights were pointing towards me.  He was actually driving back across the
outside lane towards me.

 

. . . .

 

At that point, survival instinct kicked in
and I turned and ran back across the field or across the ditch towards my
patrol unit.





[7]Video tapes of the
officers= chase of Poynter=s car were mistakenly erased.  Sergeant Porter testified that when officers
took Poynter out of his vehicle, he showed signs of intoxicationChe could not support his
own weight and his eyes were extremely dilated. 
Officer Riggall stated that Poynter did not appear to be intoxicated.





[8]The indictment alleged
that Poynter=s car, in the manner of
its intended use, was capable of causing death or serious bodily injury.





[9]In his closing argument,
Poynter=s counsel theorized that
Poynter did not intend to drive at Officer Riggall, but that instead, Poynter
either lost control of his car or was just attempting to continue to evade the
officers.





[10]Importantly, he does not
dispute that he drove his car in Officer Riggall=s direction; rather, he
asserts that his Aconduct was
misinterpreted.@





[11]As noted above, on
appeal, Poynter contends that he was attempting to evade arrest; during closing
argument at trial, his counsel also asserted that he may have lost control of
his car.