# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00403-CR

**Allen William Owen, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
### NO. 07-1549-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Allen Owen was convicted of felony driving while intoxicated. *See* Tex. Pen. Code Ann. § 49.04 (West 2003) (listing elements for offense of driving while intoxicated); *id.* § 49.09(b) (West Supp. 2009) (elevating offense to felony if individual has been convicted of driving while intoxicated on two prior occasions). Further, the jury found that Owen used a deadly weapon (his car) during the offense. *See id.* § 1.07(a)(17)(B) (West Supp. 2009) (defining "deadly weapon"). Ultimately, the jury sentenced Owen to 50 years' imprisonment. On appeal, Owen argues that the evidence supporting the deadly-weapon finding is legally and factually insufficient and that the jury charge was improper. We will affirm the judgment of the district court.

## BACKGROUND

After leaving a convenience store early on a Saturday evening, Owen got in his car and headed home. During his drive home, Owen hit the trailer hitch of a truck parked in a driveway

in his neighborhood. The truck belonged to Tim Jatzlau who lived down the road from Owen. At the time Owen swiped the truck, Jatzlau was standing on the opposite side of the roadway talking with his neighbor from across the street, Randy Brown.

After striking the truck, Owen continued home, and Brown and Jatzlau followed Owen and caught up with him after he parked his car in his driveway. Brown and Jatzlau talked with Owen for a short time and ultimately called the police to report the incident. Officer Joseph Claypool responded to the call and arrived on the scene a few minutes later. After performing several field sobriety tests, Claypool arrested Owen.

Sometime after his arrest, Owen was charged with driving while intoxicated. *See id.* § 49.04. Because Owen had been convicted of driving while intoxicated on two prior occasions, the crime alleged in this case constituted a felony. *See id.* § 49.09(b). The indictment also alleged that Owen had previously been convicted of three additional felony offenses: burglary of a habitation, credit card abuse, and burglary of a vehicle. *See id.* § 12.42(d) (West Supp. 2009) (elevating permissible punishments for repeat felony offenders). Finally, the indictment alleged that Owen "used or exhibited a deadly weapon, namely, **a motor vehicle**, during the commission" of the offense at issue. *See id.* § 1.07(a)(17)(B) (explaining what constitutes deadly weapon).

During the trial, Brown, Jatzlay, and Claypool all testified. After the trial concluded, the jury found Owen guilty and also concluded that Owen had used a deadly weapon during the commission of the offense. During sentencing, Owen pleaded true to the additional felony offenses, and the jury sentenced Owen to 50 years' imprisonment. Owen appeals the judgment of the district court.

**DISCUSSION**

In three issues, Owen challenges the deadly-weapon finding. In his first two issues, he asserts that the evidence was legally and factually insufficient to support the deadly-weapon finding.[1] In his final issue, Owen argues that the portion of the jury charge explaining what constitutes a deadly weapon was improper because it allowed the jury to consider "hypothetical evidence . . . in deciding whether a motor vehicle is a deadly weapon." We will address those issues in the order raised.

*Legal and Factual Sufficiency*

As mentioned above, in his first two issues, Owen challenges the legal and factual sufficiency of the deadly-weapon finding. Under the penal code, a deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(a)(17)(B).[2] In felony driving-while-intoxicated cases, an automobile can be considered a deadly weapon. *Sierra v. State*, 280 S.W.3d 250, 254 (Tex. Crim. App. 2009); *see Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000) (explaining that "[a]ll

---

[1] We note that when making his arguments, Owen limits his discussion to the deadly-weapon finding and does not dispute that he was driving while intoxicated or that he hit Jatzlau's truck while driving home.

[2] "A deadly weapon finding limits a defendant's eligibility for community supervision and parole." *Mann v. State*, 58 S.W.3d 132, 132 n.1 (Tex. Crim. App. 2001); *see* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2009) (explaining that portion of code allowing for judicially ordered community supervision does not apply when deadly-weapon finding is made); Tex. Gov't Code Ann. §§ 508.145 (imposing minimum time before defendant with deadly-weapon finding may be released on parole), 508.149 (prohibiting defendant with deadly-weapon finding from being released to mandatory supervision), 508.151 (West Supp. 2009) (explaining that parole panel may not establish presumptive parole date for defendant with deadly-weapon finding).

3

felonies are theoretically susceptible to an affirmative weapon finding"), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001). To sustain a deadly-weapon finding, there must be "evidence that others were endangered and not merely a hypothetical potential for danger if others had been present." *Mann*, 13 S.W.3d at 92; *see also Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (stating that deadly-weapon finding requires evidence that "other people were put in actual danger"). In other words, the determination must be made "in light of the facts that actually existed while the felony . . . was committed." *Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997), *rev'd on other grounds*, 970 S.W.2d 566 (Tex. Crim. App. 1998). Factors deemed to be determinative in prior cases include reckless and dangerous driving. *See Sierra*, 280 S.W.3d at 255-56.

In reviewing the legal sufficiency of this type of finding, a reviewing court must view the evidence in the light most favorable to the State and determine whether "any rational trier of fact could" have found "beyond a reasonable doubt that a vehicle" was used as a deadly weapon. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). The trier of fact is entitled to determine what weight to give any particular evidence, to resolve conflicts in the evidence, and to evaluate the credibility of the witnesses. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

Unlike for legal-sufficiency reviews, in factual-sufficiency determinations, all of the evidence is considered in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). When performing this analysis, courts bear in mind that the fact finder is the sole judge of the weight and credibility of the evidence presented. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.

App. 2000); *see also* Tex. Code Crim. Proc. Ann. art. 36.13 (West 2007) (explaining that "jury is the exclusive judge of the facts"). Under a factual sufficiency review, the judgment may only be set aside if (1) the evidence is "so weak that the jury's verdict seems clearly wrong and manifestly unjust," or (2) the verdict is "against the great weight and preponderance of the evidence." *Watson*, 204 S.W.3d at 414-15.

In determining whether there is sufficient evidence to support a deadly-weapon finding in a felony driving-while-intoxicated case, reviewing courts must "evaluate the manner in which the defendant used the motor vehicle during the felony; and second, . . . consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra*, 280 S.W.3d at 255.

In his brief, Owen lists several reasons why he believes that the evidence is both legally and factually insufficient to support the deadly-weapon finding. First, he refers to portions of Jatzlau's and Brown's testimony stating that there were no other motorists on the roadway at the time of the collision and asserts that the evidence was insufficient for that reason. *See Williams*, 946 S.W.2d at 435-36 (concluding that there was no evidence that vehicle in that case was used as deadly weapon because, among other things, no evidence was introduced showing that any motorists were on highway at time of offense), *rev'd on other grounds*, 970 S.W.2d 566 (Tex. Crim. App. 1998). Next, although he acknowledges that Jatzlau and Brown were across the street at the time of the collision, he asserts that the evidence is insufficient because no evidence was introduced showing that either neighbor had to engage in any evasive maneuvers to avoid injury. As support for this proposition, Owen refers to a statement by Brown in which he admitted that Owen's "car

5

never came at" him. Finally, Owen argues that although testimony was introduced indicating that children often played on or near the roadway, no evidence was introduced demonstrating that there were any children on or near the roadway at the time of the incident. Accordingly, he insists that the testimony presented during trial regarding what could have happened to children playing in the roadway is hypothetical and could not properly serve as a basis for the deadly-weapon finding. *See Mann*, 13 S.W.3d at 92.

It is true that no evidence was introduced showing the presence of other motorists on the roadway, but both Brown and Jatzlau were standing on or near the roadway at the time of the collision. *See Drichas*, 175 S.W.3d at 799 (explaining that in order for deadly-weapon finding to be proper, it is not necessary that others be in zone of danger or take evasive action). Although they were on the opposite side of the roadway, they were standing directly across from where the collision occurred, and they testified that the car came within 10 to 15 feet of them. Moreover, they each indicated that Owen was traveling at a speed of 25 to 30 miles per hour at the time of the collision.

Furthermore, Brown testified that at the time of the collision, Owen "was not in control of the car." Additionally, Brown stated that he saw Owen's car "hit up onto the curb[] and hit the receiving hitch of [Jatzlau's] truck" and that Owen almost ran into a mailbox. Similarly, Jatzlau revealed that after hearing a loud noise and turning around to investigate, he noticed that his truck was rocking as if it had been hit by something and then saw a car driving over the curb in front of his house and returning to the roadway. In addition, Jatzlau testified that his truck was parked within the driveway and that no part of it stuck out into the roadway. In fact, both Jatzlau and Brown testified that the end of the trailer hitch was between two and three feet from the roadway. Moreover, Jatzlau testified that he yelled at Owen to stop his car but that Owen kept on driving.

Further, both Jatzlau and Brown agreed during trial that the vehicle as driven was capable of causing death or serious bodily injury.[3] *See id.* at 798 (Tex. Crim. App. 2005) (explaining that deadly-weapon finding can be supported by evidence that driver was traveling on wrong side of highway). This sentiment was echoed by Claypool during his testimony. After being asked about his experience with traffic accidents, he answered affirmatively that a car driven at the speed estimated and in the manner described by Brown and Jatzlau was capable of causing serious bodily injury. Similarly, he stated that in light of the manner in which Owen was driving, "the potential [was] there for great danger."

In addition to the testimony regarding the collision, evidence was also introduced regarding Owen's high level of impairment. In their testimonies, Brown and Jatzlau both stated that they followed Owen to his driveway and confronted him. In his testimony, Brown explained that Owen was slurring his speech and "looked like he was going to not be able to stand up." Further, both Brown and Jatzlau testified that after confronting Owen, Owen "urinated on himself."

Officer Claypool also provided testimony regarding Owen's level of impairment. Specifically, he stated that after arriving at Owen's home, he talked to Owen and that Owen admitted that he had consumed two beers. In addition, Claypool explained that although he attempted to perform field sobriety tests on Owen, Owen was unable to complete them due to his high level of intoxication. In fact, Claypool explained that Owen was barely able to stand, was unable to right himself when he fell over, and had, at some point, urinated on himself. Then Claypool stated that

---

[3] Jatzlau also added, "when I thought about it and looked where this car went, if I would have been there – I mean, I don't know if it would have killed me, but definitely hurt. Or who knows."

7

because Owen was unable to stand, he allowed Owen to perform one of the field sobriety tests from a seated position.[4]

In addition, Claypool testified that after determining that Owen was impaired, he asked Owen for a blood sample, which Owen consented to. The blood test revealed that Owen had a blood alcohol level of 0.28, which was more than three times the legal limit.[5] Tex. Pen. Code Ann. § 49.01(2) (West 2003) (explaining that intoxication refers to situations in which individuals do not have normal use of faculties because they have ingested something or to situations in which individuals have blood alcohol concentrations of 0.08 or higher).

When viewing the evidence in the light most favorable to the verdict, particularly the evidence regarding Owen's level of impairment, the reckless and dangerous manner in which he was driving his car, and the proximity of Brown and Jatzlau to Owen's car, we conclude that a reasonable

---

[4] During the trial, a video recording of Owen's field sobriety tests was played for the jury and admitted into evidence. In the video, Owen is unsteady on his feet and repeatedly falls over. When the officers attempted to help Owen up, Owen begins to lean on the officers. Eventually, the officers moved Owen over to the front of their police car in order to allow him to lean against the car and support himself so that they could continue their testing. While leaning against the car, Owen repeatedly laid down on the hood and also slid down the front of the car. In the video, Owen also admits taking prescription drugs on the day in question.

[5] We note that a blood sample was not taken from Owen until a few hours after he had driven home. Although the sample was taken approximately two hours after Owen made it home, the testimony from Brown and Jatzlau demonstrated that they were interacting with Owen almost immediately after he parked his car, and Claypool testified that he arrived on the scene just a few minutes after the 911 call was made. Furthermore, none of them testified that they observed Owen drinking during their interactions. Moreover, Claypool stated that Owen was in his custody from the time that he arrived on the scene until sometime after the blood sample was taken. Accordingly, the high test result obtained from the sample taken a few hours after Owen parked his car is some evidence of his impairment at the time he was driving. In any event, the video of Owen's field sobriety tests, which was admitted into evidence and taken shortly after Owen arrived home, demonstrates Owen's high degree of impairment.

8

trier of fact could have found beyond a reasonable doubt that the manner in which Owen was using his car was capable of causing death or serious bodily injury.  Accordingly, the evidence is legally sufficient to support the deadly-weapon finding.  Further, when viewing all of the evidence in a neutral light, we cannot conclude that the evidence supporting the judgment is so weak as to make the jury's verdict clearly wrong or unjust, nor can we conclude that the verdict is against the great weight and preponderance of the evidence.  Therefore, the evidence is factually sufficient.

For these reasons, we overrule Owen's first two issues on appeal.

*Jury Charge*

In his final issue on appeal, Owen contends that even though the law requires that someone actually be endangered before a deadly-weapon finding may be made, the charge at issue allowed the jury to consider hypothetical danger when deciding whether Owen used his car in a manner that could have led to death or serious bodily injury.  The portion of the charge at issue provides as follows:  "'Deadly weapon' means anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." (Emphasis added.)  As support for his assertion that the charge was given in error, Owen refers to various definitions for the term "capable" and asserts that based on the commonly understood meaning for "capable," the jury could have thought that hypothetical dangers may be considered when making a deadly-weapon finding.  *See, e.g.*, http://dictionary.reference.com/browse/capable (defining "capable" as "having the ability or capacity for").  Further, Owen refers to various statements made during the trial regarding what might have

happened had children been playing in the area at the time of the collision and what could have

happened had Owen struck someone with his car.[6]

> In order to reverse a case for a jury-charge error, the appellate court must decide that the charge was erroneous and that the error resulted in harm sufficient to require reversal. *Hutch v. State*, 922 S.W.2d 166, 170-71 (Tex. Crim. App. 1996). The amount of harm necessary to justify a reversal varies depending on whether the appellant preserved the error. *Id.* at 171. In this case, Owen did not object to the district court's instruction or request that an instruction prohibiting consideration of hypothetical dangers be given. Thus, Owen did not preserve the error for appeal so a greater showing of harm is required. *See id.* Accordingly, to prevail on this issue, Owen must

---

[6] In his brief, Owen contends that the following instruction should have been given to the jury:

> A vehicle can be a deadly weapon if it is driven so as to be capable of causing death or serious bodily injury. The "capability" of causing death or serious bodily injury must be evaluated in light of the facts that actually existed when the incident occurred, rather than conjecture about what might have happened if the facts had been somewhat different. There must be evidence that others were actually endangered, not merely a hypothetical potential for dangers if others had been present. For there to be evidence that others were actually endangered by the use of a vehicle, there must be evidence that other driver(s) were both present and endangered by the defendant's use of his vehicle.

Owen contends that this definition correctly prohibits a jury from considering hypothetical dangers when making a deadly-weapon finding.

Given our ultimate resolution of this issue on appeal, we do not need to decide whether this charge or a similar one should have been given to the jury. But we do note that the charge suggested by Owen addresses situations in which other drivers were endangered and would not seem to apply to situations in which the individuals at risk were pedestrians or other non-drivers. *See, e.g.*, *Kious v. State*, No. 01-07-00857-CR, 2008 Tex. App. LEXIS 3159, *5 (Tex. App.—Houston [1st Dist.] May 1, 2008, no pet.) (explaining that people endangered by defendant's conduct were individuals in line to get barbeque).

10

show that the charge given to the jury caused him egregious harm. *Martin v. State*, 200 S.W.3d 635, 639-40 (Tex. Crim. App. 2006). That is a difficult standard to satisfy. *Hutch*, 922 S.W.2d at 171. Essentially, the appellant must show that the jury-charge error deprived him of the right to a fair and impartial trial. *Martin*, 200 S.W.3d at 639-40; *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). In determining if harm warranting reversal is present, courts should consider the charge itself, the evidence in the record, the arguments of counsel, and any other relevant information revealed by the record. *Hutch*, 922 S.W.2d at 171; *see Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

The charge at issue sets out the elements for driving while intoxicated and felony driving while intoxicated. Further, the charge correctly informed the jury that they only had to address the deadly-weapon issue if they first found that Owen was guilty of felony driving while intoxicated and that the jury could only make a deadly-weapon finding if they determined beyond a reasonable doubt that Owen "used or exhibited a deadly weapon . . . during the commission of the felony offense." Moreover, the definition of deadly weapon found in the charge is consistent with the statutory definition for a deadly weapon. *See* Tex. Pen. Code Ann. § 1.07(a)(17)(B).

Even though the definition found in the charge essentially tracks the statutory definition, this Court has previously stated that "[b]ecause the case law requires evidence that others were actually endangered as opposed to evidence of hypothetical or potential danger before someone may be convicted of using a vehicle as a deadly weapon, it is arguable that submitting only the statutory definition of deadly weapon to the jury does not distinctly set forth the law applicable to the case." *See Woodall v. State*, No. 03-05-00850-CR, 2008 Tex. App. LEXIS 6249, *13-14

11

(Tex. App.—Austin Aug. 14, 2008, pet. ref'd). Although we noted the possibility that a charge tracking the language of the statute might not provide all of the necessary information, we ultimately decided that even though the appellant had preserved the error, it was unnecessary to reach the issue because the harm, if any, did not require reversal. *Id.* at \*14 (concluding that deadly-weapon finding was supported by legally sufficient evidence and that "there is no reversible error here because the jury could not have been misled by the statutory definition of deadly weapon into rendering an unjust verdict based on the evidence in this record").

Similarly, in this case, we conclude that the harm, if any, stemming from this unpreserved error does not reach the level of egregious harm. First, the deadly-weapon finding is supported by both legally and factually sufficient evidence.[7] Moreover, although during the trial questions were asked regarding hypothetical dangers that Owen's driving could have posed to neighborhood children, in its closing, the State emphasized that the jury should make a deadly-weapon finding because the manner in which Owen was driving his vehicle posed a real, not a hypothetical, threat to Brown and Jatzlau. Specifically, the State explained as follows:

> It just says in the way that it was used, in the manner of its use, was it capable. Was it capable. Ladies and gentlemen, there were two real people out there who were in danger because of this Defendant's driving. No hypothetical. No guess. Two very real people who you heard from: Mr. Jatzlau and Mr. Brown. And if you remember, Mr. Jatzlau, he's standing in the street. And sure, he's off to the curb, but he's in the street talking to his neighbor, and he is not 10 to 12 feet away from the Defendant when the Defendant makes his erratic move, hit his truck, comes off the curb and turns around. He's in very real danger. It doesn't mean that the Defendant had to

---

[7] It is worth noting that in his brief, Owen states that the jury-charge issue need only be addressed if this Court concludes that the evidence presented was factually insufficient and orders a new trial.

12

come after him, or that Mr. Jatzlau had to jump out of the way. The law doesn't require that. Just whether or not he was in danger, if it was capable of causing serious bodily injury or death. And clearly, from Mr. Brown's testimony alone, you know it was. The guy who was driving had lost control, that's what Mr. Brown said. Remember? Losing control of . . . a heavy piece of machinery. Losing control in a neighborhood when somebody is standing in the street, when somebody is standing just up on that curb 10 to 12 feet away. Those are two very real people that, by the grace of God, could have been seriously injured or even worse, and that's why this is a deadly weapon.

In light of the preceding, we must conclude that any error in this case arising from the inclusion of the definition of "deadly weapon" at issue did not reach the level of egregious harm. Accordingly, we overrule Owen's third issue on appeal.

## CONCLUSION

Having overruled all of Owen's issues on appeal, we affirm the judgment of the district court.

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: February 26, 2010

Do Not Publish

13