**Johnny Weldon CATES, II, Appellant,**

v.

**The STATE of Texas.**

**No. 421–02.**

Court of Criminal Appeals of Texas.

April 16, 2003.

---

1.  102 S.W.3d 720.

W. Troy McKinney, Houston, for Appellant.

William J. Delmore, III, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court joined by MEYERS, PRICE, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ.

Johnny Weldon Cates, II, was convicted of failing to stop and render aid. We must decide whether the evidence was sufficient to show that his truck was used or exhibited as a deadly weapon during that offense. We conclude that it was not.

### Facts

In the early morning hours of December 23, 1998, Brandon Smith was a passenger in Brent Tucker's car. Tucker lost control of the vehicle on Spring–Cypress Road in northern Houston. The car struck a concrete culvert, hit a tree, and burst into flames. Tucker pulled Smith out of the burning car and, thinking Smith would be safe, ran to find a phone to call the fire department.

But Smith was not safe. It was the middle of the night on a lonely stretch of road with no street lights. The roadway was wet, and the accident had occurred just past a curve in the road. As the neighbors awoke and a few passers-by gathered, Smith visited with them briefly and then began to walk back across the street. At that moment, a truck rounded the curve and headed straight for Smith. A witness shouted, but to no avail. The truck struck Smith, killing him. The driver of the truck slowed, then continued down the road.

Claudia Wong and her husband did not see Smith get struck, but they were there when it happened. They had been driving to work when they came upon Tucker's

flaming car. They turned around to see if they could help and, moments later, the truck hit Smith and left the scene. Realizing what had happened, they took off after the truck, following it as it went down Spring–Cypress, took a right on Kleiń Church Road, and stopped at a traffic light. At that point, they wrote down the license plate number and returned to the accident scene. Wong testified that, in following the truck, they were going 85 to 90 miles per hour and that they caught up to the truck "fast." She further testified that the truck never left the road and that there was no other traffic that night.

After the Wongs returned to the scene with the license plate number, the deputies entered the plate number into the squad car's computer. They obtained Cates's name and an address not far from the accident scene. An investigator calculated that the time it would take to travel from the accident scene to the listed address was no more than five minutes.

The deputies went to the address and found the truck. They spoke with Cates's roommate and then with Cates. Cates was groggy from sleep. An investigator testified that his eyes were bloodshot, his speech sluggish, and his breath smelled of alcohol. Cates testified at trial that he had had a few beers the previous evening but he was not intoxicated.

### Procedural History

The State prosecuted Cates for failing to stop and render aid to Smith. The State also sought an affirmative finding that the truck Cates had been driving had been used or exhibited as a deadly weapon during that offense. A jury found Cates guilty and found that the truck had been used as a deadly weapon. The jury sentenced Cates to five years in prison and a $5,000 fine.

Cates appealed and claimed that the evidence was legally insufficient to sustain the deadly weapon finding. A majority of the Court of Appeals disagreed.[1] The Court acknowledged that the "essential question" was whether Cates, "while leaving the scene of the accident, operated the vehicle in a manner capable of causing serious injury or death."[2] The Court found the evidence sufficient to establish that he did so based on Wong's testimony that she and her husband had driven 85 to 90 miles per hour while chasing Cates. The Court concluded that "the jury could rationally infer from the testimony of Claudia Wong, that [Cates]'s vehicle was being driven at a speed approximating the speed the Wongs used to catch [Cates], a use rendering [Cates]'s vehicle capable of causing death or serious bodily injury during the commission of the offense—leaving the scene of an accident."[3]

Justice Hudson disagreed. He wrote in dissent that "[a]lthough Ms. Wong testified that she was nervous because her husband was driving 85 to 90 miles per hour, there is no evidence that [Cates] was driving at such speeds. In fact, Ms. Wong testified the 'chase' was concluded quickly and they were able to get the vehicle's license number while [Cates] was stopped at a traffic signal. Thus, Ms. Wong's testimony suggests the speed of [Cates]'s vehicle was less, perhaps significantly less, than the speed of her pursuing vehicle."[4] Justice Hudson concluded that the "State offered no testimony that [Cates] was driving recklessly when he left the scene or that

1. *Cates v. State,* 66 S.W.3d 404, 412 (Tex. App.-Houston [14th Dist.] 2001).

2. *Id.* at 413.

3. *Id.*

4. *Id.* at 414 (Hudson, J., dissenting).

his conduct presented an unreasonable danger to others. Without such evidence, the jury could not rationally conclude that [Cates] used or exhibited a deadly weapon in the commission of the offense." [5]

We granted Cates's petition for discretionary review to determine whether the Court of Appeals erred in finding the evidence sufficient to sustain the deadly weapon finding.

## Analysis

■■■ We review the record to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the truck was used or exhibited as a deadly weapon.[6] The evidence must demonstrate that the deadly weapon was used or exhibited "during the transaction from which" the felony conviction is obtained.[7] To sustain a deadly weapon finding, there must be evidence that others were actually endangered, not "merely a hypothetical potential for danger if others had been present."[8] An automobile can be a deadly weapon if it is driven so as to endanger lives.[9]

■■ Cates was convicted of failure to stop and render aid. As the Court of Appeals recognized, "the gravamen" of that offense "is leaving the scene of the accident."[10] Therefore, the relevant time period for determining whether his truck was used and exhibited as a deadly weapon is the time period after Smith was hit.

The only evidence in the record concerning the manner in which the truck was driven after it hit Smith was Wong's testimony. She testified that she and her husband drove 85 to 90 miles per hour when they chased the truck. The Court of Appeals found this testimony sufficient because a jury could rationally infer that the driver of the truck was traveling at the same rate of speed as the Wongs.[11]

But as Justice Hudson pointed out below, there is no evidence that the truck was traveling at this speed. Wong testified that the "chase" ended quickly and they caught up to the truck when it was stopped at a traffic light. This evidence indicates that the truck was moving at a speed less, "perhaps significantly less,"[12] than the Wongs. That the truck stopped at the traffic light also refutes any conclusion that the truck was driven dangerously. Moreover, the truck was found at an address just five minutes away from the accident scene. This supports Wong's testimony that the chase ended quickly, reflecting that the Wongs must have been driving significantly faster than the truck. And Wong testified that there was no other traffic on the road at the time and that the truck never left the roadway. Furthermore, there is no evidence in this record that anyone was actually endangered by the truck while it left the scene of the accident.

The State argues that the facts occurring before the offense of failure to stop and render aid constitute relevant circum-

---

**5.** *Id.*

**6.** *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Tisdale v. State,* 686 S.W.2d 110, 114 (Tex.Crim.App. 1985) (op. on reh'g).

**7.** *Ex parte Jones,* 957 S.W.2d 849, 851 (Tex. Crim.App.1997).

**8.** *Mann v. State,* 13 S.W.3d 89, 92 (Tex.App.-Austin 2000), *adopted "as our own," Mann v. State,* 58 S.W.3d 132 (Tex.Crim.App.2001).

**9.** *Tyra v. State,* 897 S.W.2d 796, 798–99 (Tex. Crim.App.1995).

**10.** *Cates,* 66 S.W.3d at 412.

**11.** *Id.* at 413.

**12.** *Id.* at 414 (Hudson, J., dissenting).

stantial evidence that the truck was driven dangerously during that offense. The State contends that since Smith was hit and killed, the truck was obviously a deadly weapon at that time. According to the State, the truck would not then have ceased to be a deadly weapon in the moments immediately afterward. Instead, the State argues, the truck continued to be a deadly weapon even after Smith was hit.

The State is correct that facts occurring before and after an offense can, in a given case, be relevant circumstantial evidence of the offense charged. But in this case, there is no evidence indicating that the truck was driven in a deadly manner during the offense of failure to stop and render aid. The fact that the truck was driven in a deadly manner before the offense could assist the trier of fact if it were coupled with other evidence of how the truck was driven during the offense. But absent any evidence of the truck's use or exhibition as a deadly weapon during the offense, the evidence of how it was driven before the offense is not sufficient to sustain the deadly weapon finding.

### Conclusion

We find the evidence insufficient to establish beyond a reasonable doubt that the truck was used or exhibited as a deadly weapon during the offense of failure to stop and render aid. We reverse only that part of the Court of Appeals' judgment which affirmed the deadly weapon finding and reform the trial court's judgment to delete it.[13]

KELLER, P.J., concurred in the result.

WOMACK, J., dissented.

13. *See* Tex.R.App. P. 78.1(c).