NO. 07-02-0140-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 10, 2003
_____

JESSE E. OLIVA, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-436,516; HON. JIM BOB DARNELL, PRESIDING
_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Jesse E. Oliva, Jr. (appellant) appeals his conviction for aggravated assault. Via two issues, appellant contends that 1) the trial court erred by failing to grant his motion for directed verdict and 2) the evidence was legally and factually insufficient to support the jury verdict. We affirm the judgment.

***Standard of Review***

A challenge to the trial court's denial of a motion for instructed verdict is, in effect, a challenge to the legal sufficiency of the evidence to support the conviction. *See Williams*

*v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993). Thus, we must consider all the evidence presented at trial, both from the State and the defense, in the light most favorable to the verdict, *Cook v. State*, 858 S.W.2d at 470, *Bellah v. State*, 415 S.W.2d 418, 420 (Tex. Crim. App. 1967), and determine whether a rational trier of fact could have found that the essential elements of the offense existed beyond all reasonable doubt. *Mathis v. State*, 67 S.W.3d 918, 922 (Tex. Crim. App. 2002).

Next, the standard by which we review the factual sufficiency of the evidence underlying the verdict is well established and need not be reiterated. Instead, we cite the parties to *Sims v. State*, 99 S.W. 3d 600, 601 (Tex. Crim. App. 2003); *Zuliani v. State*, 97 S.W.3d 589, 593-94 (Tex. Crim. App. 2003); and *King v. State*, 29 S.W.3d 556, 562-63 (Tex. Crim. App. 2000) for its explanation.

### *Application of the Standards*

Because both issues involve the sufficiency of the evidence, we address them together. Furthermore, appellant believes that he was entitled to a directed verdict and the questions the sufficiency of the evidence because the State purportedly failed to prove that a deadly weapon was used or exhibited during his assault upon another. We disagree and overrule the issues.

A person commits the offense of aggravated assault by intentionally or knowingly threatening another with imminent bodily injury while using or exhibiting a deadly weapon. Tex. Pen. Code Ann. §22.01(a)(2) (Vernon 2003). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*.

2

at §1.07(17)(B). Here, the deadly weapon that was used or exhibited by appellant when assaulting his victim was a motor vehicle. Such a mechanism can be a deadly weapon if its use or exhibition actually endangers life; that is, it must do more than present a mere potential for endangering others. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) *citing Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.--Austin 2000) *adopted "as our own," Mann v. State*, 58 S.W.3d 132 (Tex. Crim. App. 2001).

The evidence of record illustrates that Freddie Rodriguez (Rodriguez) was returning home after washing his wife's car, a 1997 Camaro. With him was his three-year-old son. Rodriguez had stopped at a stop light when appellant pulled along side him in a pickup truck. About the same time another vehicle containing female occupants pulled along the other side of Rodriguez. Apparently, he was in the middle lane of a three lane street. According to Rodriguez, appellant and the occupants of the other vehicle were conversing over his car and had been racing. Once the light changed, Rodriguez drove away while the other two vehicles remained stationary. When about 50 to 100 yards in front of appellant, Rodriguez changed lanes and entered that in which appellant drove. After Rodriguez did so, appellant sped up towards the Camaro and "screeched" his brakes when he came within less than five feet of the vehicle. Rodriguez tapped on his brakes to warn appellant that he was too close. When Rodriguez came to the next street light, appellant struck the rear of the Camaro. Rodriguez then attempted to turn, and as he did so, appellant accelerated and again struck the Camaro in effort "to push [Rodriguez] to turn-over." The Camaro went sideways, and upon Rodriguez recovering, appellant drove next to him cursing, "flipping [him] off," "trying to get [him] to pull over" and attempting to cause Rodriguez to "pull over against the curb." The force exerted each time appellant struck

3

Rodriguez' vehicle with his pickup was sufficient enough "to make [Rodriguez'] head go back." Finally, an officer testified that a motor vehicle can be a deadly weapon depending on its manner of use.

Twice striking a motor vehicle with a pickup truck, attempting to "turn over" the vehicle with the pickup, and physically forcing the vehicle from the road with the pickup is evidence from which a rational jury could find beyond reasonable doubt that the use actually endangered the lives of the others. Thus, the finding that appellant used or exhibited a deadly weapon at the time of the assault enjoys the support of legally sufficient evidence. Moreover, appellant's contention that the scenario evinced nothing more than a " routine 'fender-bender'" free of any hostile animus inaccurately describes Rodriguez' testimony. No one contradicted what the victim said. Nor did any evidence illustrate that appellant did not twice ram the Camaro, direct obscene gestures towards him, or utter invectives. Because of this, we cannot say that the verdict was clearly erroneous or manifestly unjust or that it lacked the support of factually sufficient evidence.

Accordingly, we affirm the judgment of the trial court.

Brian Quinn
Justice

Do not publish.

4