# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00369-CR

**Gary Hayden Gibbs, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 04-159-K368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Gary Hayden Gibbs of felony driving while intoxicated (DWI),[1] *see* Tex. Penal Code Ann. § 49.04 (West 2003), § 49.09(b)(2) (West Supp. 2006), and made an affirmative finding that Gibbs used or exhibited a deadly weapon during the commission of the offense. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West 2006). The jury found two enhancement paragraphs in the indictment true and sentenced Gibbs to life in prison.[2] *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2006). In his sole point of error on appeal, Gibbs argues that the evidence presented at trial is insufficient to support the jury's deadly weapon finding. We will affirm the judgment of the trial court.

---

[1] Gibbs stipulated to two prior DWI convictions that made the current offense a felony.

[2] Prior to his arrest on December 5, 2003, for the current offense, Gibbs had been convicted of DWI seven times and had served two prison terms, including a four-year prison term from 1998 to 2002.

# BACKGROUND

Around 1:00 a.m. on December 5, 2003, Roy Black, a truck driver with 28 years' experience, was driving an 18-wheeler towing a double trailer southbound on IH-35 between Jarrell and Georgetown. While Black was driving his truck in the right lane, he noticed a white van moving erratically. Black testified that the driver of the white van moved from the middle lane to the right lane and "cut [him] off," avoiding a collision with Black's truck by "a few feet." Black estimated that the white van was traveling at 66 miles per hour and that his truck was traveling at 65 miles per hour. Black testified that he "probably" reduced his speed after the van cut in front of him, although he did not have to apply his brakes or take evasive action.

Black testified that the white van then veered onto the right shoulder and crossed back through the right lane while returning to the middle lane. Black estimated that he saw the driver of the white van weave back and forth between the middle lane and the shoulder "[p]robably three or four times" while following the van for six or seven miles. Black testified that his truck and the white van were the only vehicles on the road during the time that he was following the van.

Black called 911 to report the driver of the white van because he was concerned that the driver might seriously injure or kill someone. Black testified,

> Q. In the manner that that white van was driving that night, on December 5th of 2003, cutting you off, weaving in front of you, was the manner in which he was driving or using that vehicle—was it capable of causing serious bodily injury or death?
>
> A. Yes, sir. Like I say, that's the reason I called. If I didn't think that, I wouldn't have called.

2

Black described the van and the erratic driving to the dispatcher and stayed on the line until the driver of the van exited IH-35 at the Highway 29 exit. Black did not follow the van after the driver exited the highway.

Officer Jason Jones of the Georgetown Police Department responded to a call from dispatch about a reckless driver on IH-35. Jones was given a description of the van and its approximate location. Jones spotted a van that met the description turning westbound onto Highway 29 from the IH-35 frontage road. Jones suspected that the van that he saw was the subject of the call from dispatch because "there's not a lot of white vans in that area traveling southbound on the frontage road." Jones testified that immediately after turning onto Highway 29, the driver of the white van moved onto the unimproved shoulder and stopped the van.

Jones testified,

> At that point we weren't real sure what we had. I wasn't sure if I had an intoxicated driver, or I wasn't sure if I had a person that had a medical emergency that needed help or somebody that was lost or something of that nature. So not really knowing what I had, I pulled in behind the vehicle and turned my lights on and made contact with the driver.

Gibbs, the van's driver, told Jones that he was lost and looking for Highway 29. Jones testified that Gibbs's speech was slurred and that Jones noticed a strong odor of alcoholic beverages on Gibbs's breath. Jones testified that Gibbs admitted that he drank two large drinks containing vodka and soda that evening.

Jones asked Gibbs to get out of his vehicle so that Jones could administer field sobriety tests. Jones testified that Gibbs "was unsteady on his feet while walking, and he had to use

3

his vehicle to maintain his balance." Jones first administered the horizontal gaze nystagmus test; Jones testified that Gibbs failed this test because Jones observed all six "clues" of intoxication. Gibbs then failed the walk-and-turn test; Jones testified that he observed both "clues" in the instructional phase of the test and four out of six "clues" in the walking phase of the test. Jones then began administering the one-leg-stand test; however, he cut the test short because Gibbs was drifting into the middle of the road, creating a safety hazard, and because Jones "knew that [Gibbs] was intoxicated." Even though Jones told Gibbs that he had "seen enough," Gibbs requested that he be allowed to perform the one-leg-stand test. Jones testified that he administered the test and that Gibbs failed because Jones observed two of four "clues" of intoxication.[3]

Jones arrested Gibbs and took him to the police station. Although Gibbs had agreed at the scene of his arrest to submit to Intoxilyzer breath testing, when he arrived at the jail he refused to provide a breath sample. The State brought Gibbs to trial on May 24, 2005, and presented the jury with Black's and Jones's testimony and the videotape of Gibbs's arrest, which shows the field sobriety tests that were administered to Gibbs and is consistent with Jones's account. As mentioned above, the jury convicted Gibbs of felony DWI, made an affirmative finding that Gibbs used or exhibited his vehicle as a deadly weapon during the commission of the offense, and sentenced Gibbs to life in prison. This appeal followed.

---

[3] Examples of "clues" of intoxication include stepping off the line or using arms to balance on the walk-and-turn test and swaying or hopping during the one-leg-stand test. National Highway Traffic Safety Admin., U.S. Dep't of Transp., Development of a Standardized Field Sobriety Test (SFST) Training Management System (Nov. 2001), http://www.nhtsa.dot.gov/people/injury/alcohol/SFST/appendix_a.htm.

**DISCUSSION**

In his sole point of error, Gibbs contends that the evidence presented at trial is insufficient to uphold the jury's finding that he used or exhibited his van as a deadly weapon.[4] When reviewing a challenge to the legal sufficiency of the evidence supporting a deadly weapon finding, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found beyond a reasonable doubt that the object in question was used or exhibited as a deadly weapon. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). In a factual sufficiency review, we view the evidence in a neutral light and reverse the finding only if it is so against the weight and preponderance of the evidence that it is clearly wrong and unjust. *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). A deadly weapon includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2006).

Gibbs argues that the opinion of the court of criminal appeals in *Cates* mandates reversal of the deadly weapon finding. We disagree. In *Cates*, the driver of a truck was convicted for failing to stop and render aid to a pedestrian whom he struck with his car and killed. 102 S.W.3d at 736–37. Cates appealed the jury's finding that he used or exhibited his truck as a deadly weapon during the commission of the offense. *Id.* at 737. Because Cates was convicted of failing to stop

---

[4] It is unclear whether Gibbs challenges only legal sufficiency or factual and legal sufficiency. Gibbs argues that the "evidence is insufficient" and cites the legal sufficiency standard of review. However, in the interest of justice, we review both the factual and legal sufficiency of the evidence.

and render aid, the court of appeals had to decide whether Cates used or exhibited his truck as a deadly weapon after striking the pedestrian with it. *Id.* The court of appeals held that testimony by two eyewitnesses that they drove between 85 and 90 miles per hour to catch up with Cates after he drove away from the scene of the accident was sufficient to support the deadly weapon finding. *Id.*

The court of criminal appeals, however, reversed, holding that the witnesses' testimony regarding how fast they were traveling was no evidence of how fast Cates was driving. *Id.* at 738. The court also noted that testimony indicated that no other cars were on the roadway, that Cates's truck did not leave the road, and that the "chase" ended quickly at a traffic light. *Id.* The court held that "[t]o sustain a deadly weapon finding, there must be evidence that others were actually endangered, not 'merely a hypothetical potential for danger if others had been present.'" *Id.*

Gibbs argues that, at most, he created a hypothetical potential for danger. He insists that because Black did not feel the need to take evasive action to avoid a collision with Gibbs, Black was not actually endangered by Gibbs's driving. Gibbs contends that because no other motorists were on the roadway, no one was actually endangered by his driving. However, the court of criminal appeals has held,

> [T]he statute itself does not require pursuing officers or other motorists to be in a zone of danger, take evasive action, or require appellant to intentionally strike another vehicle to justify a deadly weapon finding. The volume of traffic on the road is relevant only if no traffic exists. . . . [A] deadly weapon finding will be sustained if the definition of deadly weapon is met. . . . [A] deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner.

*Drichas*, 175 S.W.3d at 799.

6

This case is unlike *Cates*. Here, Black was driving on the highway in the early morning hours when he encountered Gibbs, who was under the influence of alcohol and driving in a dangerous manner, weaving back and forth between multiple lanes of traffic and the shoulder and cutting in front of Black within a few feet, nearly causing a high-speed collision. Considering all the evidence before it, a reasonable jury could have found that the van driven in this manner by Gibbs was capable of causing death or serious bodily injury to another person driving on the highway at the same time. Further, the jury's finding to that effect is not so against the weight and preponderance of the evidence that it is clearly wrong and unjust. We overrule Gibbs's point of error.

**CONCLUSION**

Having overruled Gibbs's issue on appeal, we affirm the judgment of the district court.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed: March 1, 2007

Do Not Publish

7