# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00451-CR

**Timmy Ray Garza, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 09-1713-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Timmy Ray Garza guilty of the offenses of driving while intoxicated with a child passenger and endangering a child. At the outset of the trial, Garza had pleaded guilty to evading arrest. The jury also found that he used his motor vehicle as a deadly weapon while committing these offenses. The jury assessed punishment of six years in prison for both the DWI and evading arrest offenses and eight years in prison, probated for ten years, for the offense of child endangerment. Garza appeals, asserting that the jury's finding that he used his vehicle as a deadly weapon is not supported by legally sufficient evidence. We will affirm the judgment.

Georgetown Police Department Officer Kyle Sanford testified that he saw a Honda Civic run a red light at the intersection of Leander Road and Interstate Highway 35. Sanford activated his overhead lights and signaled for the Civic driver to stop. Instead, the driver entered the interstate. Despite Sanford's escalating signals to stop—including flashing red and blue lights, sirens, and an air horn—the driver continued driving south at highway speeds up to 73 miles per hour. Round Rock police officers assisted by limiting access to the freeway, controlling traffic

approaching from the rear, and deploying a spike strip in the Civic's path. The spike strip punctured the Civic's two left tires. The Civic, on two flat tires, somehow continued south undeterred, although Sanford testified that "the driver started to weave more, cross into the other lanes of traffic. He had a lot more difficulty, of course, controlling the vehicle riding on only two working tires." The Civic was casting sparks and tire debris onto the road.

After the Civic crossed into the City of Austin, police deployed another spike strip that punctured the right front tire. The Civic continued driving south, exiting on a flyover to 183 southbound, a maneuver that Sanford believed was risky. The Civic finally exited at Manor Road, and Garza, the driver, abandoned his now smoking car as it rolled to a stop. Garza fled from police on foot, who eventually captured him. Police then discovered Garza's three-year-old son strapped into a car seat. Fearful that the still-smoking car might ignite, police removed the boy from the car.

In addition to hearing testimony, the jury watched a video recording of the pursuit taken by cameras mounted on police cars. The jury convicted Garza of DWI, evading police, and endangering his child. By his lone issue on appeal, Garza challenges the jury's finding that he used or exhibited a deadly weapon when committing these offenses. Garza contends that his driving performance did not provide legal sufficiency of the evidence to support the deadly weapon finding.

When determining whether legally sufficient evidence supports the deadly weapon finding, we first evaluate the manner in which the defendant used the motor vehicle during the felony, and then we consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (West 2011). Bodily injury

2

is "physical pain, illness, or any impairment of physical condition," while serious bodily injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(8), (46). A vehicle can be used as a deadly weapon. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (driver disregarded traffic signs and signals, drove erratically, wove between lanes and within lanes, and drove down the wrong side of the highway). A vehicle is not, however, always deemed to be a deadly weapon. *Cates v. State*, 102 S.W.3d 735, 738-39 (Tex. Crim. App. 2003) (reversing finding that vehicle that killed person on street was used as a deadly weapon as the driver returned home and thereby committed the offense of failure to stop and render aid). A vehicle may be used as a deadly weapon even if the defendant did not have a specific intent to use it as such. *Drichas*, 175 S.W.3d at 798. "While a deadly weapon finding does not require that the object actually cause death or serious bodily injury, it does require that the object have more than a hypothetical capability of causing death or serious bodily injury."[1] *Johnston v. State*, 115 S.W.3d 761, 764 (Tex. App.—Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004).

We will view the evidence in the light most favorable to the verdict and determine whether the jury rationally could have found beyond a reasonable doubt that Garza used his vehicle as a deadly weapon. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see also*

---

[1] Appellant mentions in his summary of the argument that he believes the jury should have been instructed that a showing of actual harm is required for a deadly weapon finding. He does not present that issue in the main text as a point of error, however. Regardless, we conclude that no showing of actual harm is required, and the trial court did not err by failing to include an instruction requiring a finding of actual harm. *See Johnston v. State*, 115 S.W.3d 761, 764 (Tex. App.—Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004).

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We defer to the jury's credibility and weight determinations. *Brooks*, 323 S.W.3d at 894; *Jackson*, 443 U.S. at 319.

Police officers who pursued Garza provided testimony supporting the finding. Officer Sanford testified that, after Garza's left tires were deflated, "the driver started to weave more, cross into the other lanes of traffic. He had a lot more difficulty, of course, controlling the vehicle riding on only two working tires." During this time, Garza was driving on IH-35 at speeds up to 73 miles per hour. Georgetown Police Department Officer Wyatt Raley, who joined the pursuit in progress, stated that Garza's tires disintegrated and hit trailing vehicles but did not cause him to make evasive maneuvers. Sanford testified that he believed Garza's ability to control the vehicle declined as the chase wore on and his tires deteriorated. He testified that Garza cut off one driver by changing lanes abruptly and that tire debris forced Sanford to take evasive action. Sanford asserted that the disintegrating tires could have caused a loss of control that posed a significant risk had Garza been required to make a sudden change of direction in traffic—although he agreed that situation did not occur during the pursuit. Sanford testified that Garza abandoned his vehicle before it came to a complete stop and that it rolled forward while Garza's child was strapped to a child safety seat inside. Georgetown Police Department Interim Sergeant Dale Duncan testified that when he arrived at the scene shortly after the stop, Garza's vehicle was "destroyed" from the disintegration of the three tires. Duncan testified that the car was smoking so much he feared that it would ignite.

Garza attempted to establish through cross-examination support for his argument that, despite police officers' stated fears of what might have happened, Garza did not injure or imperil anyone. Sanford conceded that he had no scientific research to determine whether or how much the likelihood that Garza would lose control of his vehicle increased once the tires were flattened. Sanford also acknowledged that Garza stayed in his lane most of the time and used turn signals

4

when he changed lanes. Police tactics minimized the number of other drivers on the road, thereby minimizing the peril to others from Garza's driving.

Although no one was injured during Garza's evasion, we cannot say based on this record that no reasonable jury could rationally conclude that this use of a vehicle was capable of causing death or serious bodily injury. Garza not only drove the car while intoxicated, he drove it while fleeing police with his young son strapped into the rear seat. He drove it down a major highway at up to 73 mph, across two spike strips deployed by police, and then continued on damaged and disintegrating tires. The tire debris caused one police officer to take evasive action and "destroyed" Garza's vehicle. With his son still strapped into the car, he abandoned the car rolling and smoking so heavily that a police officer feared it would ignite. While the early stages of this pursuit may have been more like the relatively uneventful drive in *Cates*, *see* 102 S.W.3d at 738-39, and may never have reached the level of risk demonstrated in *Drichas*, *see* 175 S.W.3d at 798, we conclude that, viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's finding that Garza used the car as a deadly weapon while driving while intoxicated, evading arrest, and endangering a child.

Affirmed.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 31, 2011

Do Not Publish

5