ACCEPTED
03-16-00561-CR
14520728
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/3/2017 12:29:17 AM
JEFFREY D. KYLE
CLERK

## No. 03-16-00561-CR

IN THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/3/2017 12:29:17 AM
JEFFREY D. KYLE
Clerk

ESAU POREE

Defendant – Appellant

vs.

THE STATE OF TEXAS

Plaintiff – Appellee

On Appeal from the 167th District Court of Travis County, Texas
Hon. P. David Wahlberg Presiding
Trial Court Nos. D-1-DC-15-301805

APPELLANT'S BRIEF

Gregory Sherwood
Attorney
P.O. Box 200613
Austin, Texas 78720-0613
(512) 484-9029
Email: gsherwood@mail.com
State Bar No. 18254600

Court-Appointed Attorney on
Appeal for Esau Poree

**Identity of Parties and Counsel**

No. 03-16-00561-CR; *Esau Poree v. The State of Texas*

Esau Poree (Defendant – Appellant):

Esau Poree
TDCJ # 2083174
Estelle Unit
264 FM 3478
Huntsville, Texas  77320-3220

Trial Counsel:                                    Appellate Counsel:

Keith T. Lauerman (appointed)          Gregory Sherwood (appointed)
107 N. Lampasas Street                    P.O. Box 200613
Round Rock, Texas 78664                 Austin, Texas  78720-0613

Julie E. Pennington (appointed)
910 West Avenue, Unit 16
Austin, Texas 78701


The State of Texas (Plaintiff – Appellee):

Victoria R. Winkeler (trial)
Marc A. Chavez (trial)
Travis County Assistant District Attorneys
P.O. Box 1748
Austin, Texas 78767

i

Table of Contents

Identity of Parties and Counsel ....................................................... i

Table of Contents ......................................................................... ii

Index of Authorities ..................................................................... iii

Statement of the Case .................................................................... v

Statement Regarding Oral Argument ............................................... vi

Issue Presented ........................................................................... vi

      The deadly weapon finding was supported by legally
      insufficient evidence, and should be removed from the
      trial court's judgment, which would result in a conviction
      for assault only, and a new punishment hearing at the
      enhanced class A misdemeanor range of 90 days to one year ............ vi

Statement of Facts ....................................................................... 1

Summary of the Argument ............................................................ 12

Argument and Authorities ............................................................ 13

      Standard of Review and Legal Authorities ........................................ 13

Conclusion and Prayer for Relief ................................................... 19

Certificate of Service ................................................................... 19

Certification of Word Count Compliance ......................................... 20

# Index of Authorities

## Cases

*Alexander v. State*, No. 03-10-00416-CR
(Tex. App. – Austin 2011, pet ref'd)
(not designated for publication) .................................................................. 17

*Brooks v. State*, 923 S.W.3d 893 (Tex. Crim. App. 2010) ........................... 14

*Burks v. United States*, 437 U.S. 1 (1978) .................................................... 13

*Cates v. State*, 102 S.W.3d 735 (Tex. Crim. App. 2003) .............................. 13

*Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000) ................................ 14

*Davidson v. State*, 602 S.W.2d 272 (Tex. Crim. App. 1980) ........................ 15

*Garrett v. State*, 298 S.W.3d 945 (Tex. Crim. App. 1957) ..................... 16, 17

*Jackson v. Virginia*, 443 U.S. 307 (1979) .................................................... 13

*Lancon v. State*, 253 S.W.3d 699 (Tex. Crim. App. 2008) ........................... 14

*Limuel v. State*, 568 S.W.2d 309 (Tex. Crim. App. 1978) ............................ 15

*McCain v. State*, 22 S.W.3d 497 (Tex. Crim. App. 2000) ............................ 15

*Murphy v. State*, No. 01-08-00768-CR
(Tex. App. – Houston [1st Dist.] 2010, pet. ref'd)
(not designated for publication) .................................................................. 13

*Thomas v. State*, 821 S.W.2d 616 (Tex. Crim. App. 1991) .......................... 16


## Statutes and Rules

Tex. Pen. Code § 1.07(a)(17)(A) .................................................................... 15

Tex. Pen. Code § 1.07(a)(17)(B) ..................................................... 14

Tex. Pen. Code § 1.07(a)(46) ......................................................... 15

Tex. Pen. Code § 12.43(a) ......................................................... 2, 18

Tex. Pen. Code § 22.01(a)(1) ......................................................... 14

Tex. Pen. Code § 22.01(b) ......................................................... 2, 18

Tex. Pen. Code § 22.01(b)(2) .......................................................... 2

Tex. Pen. Code § 22.01(b-1) .......................................................... 2

Tex. Pen. Code § 22.02(a)(2) ......................................................... 14

Tex. R. App. P. 9.4(i)(1) ............................................................. 20

Tex. R. App. P. 43.2(b) ............................................................. 18

# No. 03-16-00561-CR

## IN THE THIRD COURT OF APPEALS
## AT AUSTIN, TEXAS

ESAU POREE

Defendant – Appellant

vs.

THE STATE OF TEXAS

Plaintiff – Appellee

On Appeal from the 167th District Court of Travis County, Texas
Hon. P. David Wahlberg Presiding
Trial Court No. D-1-DC-15-301805

## APPELLANT'S BRIEF

TO THE HONORABLE THIRD COURT OF APPEALS:

NOW COMES ESAU POREE, who files Appellant's Brief,

respectfully stating as follows:

### Statement of the Case

This is an appeal from a jury verdict which convicted Esau Poree of

aggravated assault with a deadly weapon, with an affirmative finding that a

v

knive was used as a deadly weapon. Clerk's Record ("CR") 92. After hearing punishment evidence, the jury reached a punishment verdict of 45 years with no fine, finding that three enhancement paragraphs were true. CR 108. The judgment of conviction containing these terms of the jury's verdict, which also impose court costs of $284, is CR 110-112.

## Statement Regarding Oral Argument

Appellant's court-appointed counsel does not request oral argument since the issue raised in this brief may be adequately determined based upon the record and briefs. If the panel assigned to hear this appeal disagrees or has questions that are not answered by the briefs, then appellant's counsel can appear for oral argument.

## Issue Presented

The deadly weapon finding was supported by legally insufficient evidence, and should be removed from the trial court's judgment, which would result in a conviction for assault only, and a new punishment hearing at the enhanced class A misdemeanor range of 90 days to one year.

<u>Statement of Facts</u>

This appeal presents the question of whether there was legally insufficient evidence to support the jury's affirmative finding that a deadly weapon was used in this offense, when the knife was a box-cutter style knife with cutting surface of only 3/4 inch to one inch, none of the officers who testified at trial were asked whether this type of knife was capable of causing death or serious bodily injury, and the complaining witness stayed in the hospital less than two hours with his injury requiring only some stitches.

Appellant Esau Poree was indicted for aggravated assault with a deadly weapon, a second degree felony, for an incident arising out of an early morning altercation on August 12, 2015 at the corner of Seventh and Neches Streets near the Austin Resource Center for the Homeless ("ARCH"). RR vol. 5, p. 22, l. 4-6, and CR 15-16. The indictment charged Mr. Poree with "intentionally, knowingly, or recklessly caus[ing] bodily injury to SEAN JACKSON by CUTTING SEAN JACKSON WITH A KNIFE," and stated that Poree used or exhibited a deadly weapon, "A KNIFE," during the commission of this offense. CR 15. The indictment contained three enhancement paragraphs identifying appellant's prior convictions from Harris, Wichita and Bell Counties as grounds for increasing the punishment

1

range from a second degree felony (2 to 20 years), to a first degree felony with a minimum sentence of 25 years and maximum of 99 years or life. CR 15-16. If this case had been charged as an assault only, without the aggravating factor of use or exhibition of a deadly weapon, then the assault offense would have been a class A misdemeanor under Tex. Pen. Code § 22.01(b), with an enhanced punishment range of 90 days to one year based upon one prior felony conviction. Tex. Pen. Code § 12.43(a).[1]

At the jury trial of this case, the State presented the testimony of five (5) police officers, four (4) of whom responded to the scene, the complaining witness Sean Jackson, and his former girlfriend, Tamika Entzminger Gilbert. None of these witnesses was asked whether the knife that was used to injure Mr. Jackson, which was a box-cutter style knife with a cutting surface of 3/4 inch to one inch, RR vol. 5, p. 165, l. 13-14, was capable of causing death or serious bodily injury. An image of the box-cutter style knife can be seen on State's Ex. 8, Austin Police Department Officer Louis Holland's body camera video, at the 2:55 mark of the exhibit. The box-cutter style knife

---

[1] Appellant's prior convictions for aggravated assault with a deadly weapon and sexual assault, stated in the indictment, do not qualify to enhance a class A misdemeanor assault offense to a felony punishment range under Tex. Pen. Code § 22.01(b)(2) or (b-1) because both of those subsections require that the defendant be in some relationship or association defined in the Family Code. No such relationship exists between appellant and Jackson.

2

itself was admitted as State's Ex. 9.  RR vol. 5, pp. 142-143.  According to Officer Holland, the box-cutter style knife was removed from appellant's pocket at the scene when he was arrested, and it was the kind of knife that folded away.  RR vol. 5, p. 129.  The trial court noted outside the jury's presence that the cutting surface was 3/4 inch to one inch.  RR vol. 5, p. 165, l. 13-14.

Austin Police Department Officer John Evers testified that on August 12, 2015, he responded to a "hotshot call" at the ARCH at about 4:00 or 4:30 a.m.  RR vol. 5, pp. 21 and 24.  When Evers arrived at the scene, there were two other officers there and they had a person in custody.  RR vol. 5, p. 24, l. 12-16.  Officer Evers spoke to Sean Jackson, who suffered a laceration to his right thumb, and Mr. Jackson was transported to the Brackenridge Hospital's emergency room for treatment.  RR vol. 5, pp. 27-28.  Evers described the injury as "a fairly long incision," and a photograph of Jackson's injury that Evers took that night was admitted as State's Ex. 3.  RR vol. 7, p. 11.

Medical records regarding Mr. Jackson's injuries were admitted as State's Ex. 6 (EMS records - RR vol. 7, pp. 17-25), and State's Ex. 7 (Brackenridge records - RR vol. 7, pp. 26-75).  No medical testimony was presented by the State at trial concerning the seriousness of Mr. Jackson's

injuries. As for any evidence on this subject contained in the medical records, the EMS records stated in part, "[Jackson] was assaulted by a stranger who cut his hand right above the wrist. [Jackson] has lost about 200 ml of blood. Laceration is about 1/8 inch deep and about 3 in. long. . . . Physical exam is otherwise unremarkable." RR vol. 7, p. 20 (EMS records p. 3 of 8 at State's Ex. 6). No evidence was presented as to whether a loss of 200 ml of blood could be a serious bodily injury.

The Brackenridge Hospital records showed in part that Mr. Jackson arrived at 4:59 a.m. on August 12, 2015, and he was discharged at 6:46 a.m. that same date, less than two hours later. RR vol. 7, p. 30 (Brackenridge records p. 4 of 49 at State's Ex. 7). Jackson left the hospital with "steady gait and all belongings in no apparent distress." RR vol. 7, p. 27 (Brackenridge records p. 1 of 49 at State's Ex. 7). The post-care instructions were that Jackson should return in two weeks for suture removal. RR vol. 7, pp. 30-31 (Brackenridge records pp. 3-4 of 49 at State's Ex. 7). The hospital records defined a laceration as "a cut through the skin. This will usually require stitches (sutures) or staples if it is deep." RR vol. 7, p. 33 (Brackenridge records p. 7 of 49 at State's Ex. 7). By the time Mr. Jackson arrived at the hospital, "no bleeding [was] noted." RR vol. 7, p. 46 (Brackenridge records

4

p. 20 of 49 of State's Ex. 7).

Austin Police Department Officer Shawn Williams, who worked in the Real Time Crime Center on August 12, 2015, discussed the two or three cameras that are located by the ARCH, which are part of the camera network in downtown Austin that police officers monitor for trouble or criminal activity. RR vol. 5, pp. 39-43. Officer Williams located the footage of this incident, which was admitted as State's Ex. 5. RR vol. 5, pp. 43-45.

Austin Police Department Office Robert Anderson testified that he responded to the August 12, 2015 "hotshot call," he was the first officer on the scene, and that when he arrived, someone yelled at him, "That's the dude," and pointed at a person. RR vol. 5, pp. 102-108. Anderson told the man to stop, the man looked Anderson and kept on walking, and when the officer said stop again, the man stopped. RR vol. 5, p. 110. Officer Anderson ordered the man to get to his knees, but he did not do that, and instead began running after "fiddling" with his backpack. RR vol. 5, pp. 111-112. Anderson pulled his TASER, chased the man, and ultimately tased him, resulting in the man falling onto the sidewalk and rolling into the street. RR vol. 5, p. 112. Officer Anderson identified appellant in court as the man that he tased on August 12, 2015. RR vol. 5, pp. 115-116.

5

Austin Police Department Officer Louis Holland testified that he was on patrol that night, it took him about one minute after receiving the call to reach the scene, and that when he arrived, Officer Anderson had already deployed his TASER and the subject was on the ground. RR vol. 5, p. 125, l. 7-15. Anderson assisted in handcuffing appellant, and searched him incident to the arrest for any contraband or weapons. RR vol. 5, p. 125, l. 15-24. Officer Anderson identified appellant in court as the person that he handcuffed and searched that night, and as the person who was depicted in State's Ex. 8, his body camera video from that night, which was admitted without objection. RR vol. 5, pp. 127-128. At about 2:55 of State's Ex. 8, the viewer can see the box-cutter style knife that was found on appellant, which Anderson described as a kind of knife that folds away. RR vol. 5, pp. 129.

Austin Police Department Officer Nathan Wagner testified that he was on patrol that evening, and when he arrived at the scene, he assisted in handcuffing the person on the ground. RR vol. 5, pp. 136-139. Officer Wagner took custody of appellant's property, but did not search his person. RR vol. 5, pp. 139-140. Wagner identified the box-cutter style knife, admitted without objection as State's Ex. 9, RR vol. 5, pp. 142-143, as the

6

knife found on appellant that evening, stated that it had a removable razor blade, and agreed that if a witness said that a blue box-cutter was used to cut Jackson, this box-cutter style knife would be consistent with that description. RR vol. 5, pp. 143-144.

Tamika Entzminger Gilbert testified that Sean Jackson used to be her boyfriend, that they met in 2014, got together in 2015, dated until October 4, 2015, and that she had not communicated with him since. RR vol. 5, pp. 49-50. On the evening of August 11, 2015, and the early morning of August 12, 2015, Ms. Gilbert and Sean Jackson were outside the ARCH, sitting in chairs with their backs against the ARCH wall. RR vol. 5, pp. 52-53. Ms. Gilbert identified State's Ex. 2 as a photograph of Mr. Jackson as he appeared then. RR vol. 5, p. 53. Jackson's nickname was "G-Man," and a man Ms. Gilbert knew only as "NO" approached Jackson and said, "You have a hit out on me." RR vol. 5, pp. 54-55. Jackson did not respond, and just looked at Gilbert. RR vol. 5, p. 55. "NO" then said, "I heard you had a hit on me. Two young dudes said that[,]" RR vol. 5, p. 56, and Ms. Gilbert said that two men approached and said, "No, we wasn't talking about [Sean Jackson]." RR vol. 5, pp. 56-57.

Gilbert then testified that "NO" had a blue box cutter in his hand, and

7

he "went to hurt" Sean Jackson, but Jackson blocked the box cutter with his arm. RR vol. 5, p. 57. Mr. Jackson was seated in his chair, and "NO" was standing the entire time over Jackson. RR vol. 5, pp. 57-58. Jackson ran away, and Ms. Gilbert did not know that he was bleeding until five minutes later. RR vol. 5, pp. 58-59. Gilbert testified that she saw some blood where they were sitting. RR vol. 5, pp. 59-60. Ms. Gilbert stated that she saw the police chasing "NO," and that "NO" was tased. RR vol. 5, p. 60, l. 17-20. Gilbert was not asked to identify appellant in court as "NO." Instead, Ms. Gilbert stated that the person who approached her and "G-Man" (Jackson) when they were sitting at the ARCH wall that night was the same person who was tased by the police. RR vol. 5, p. 60, l. 21-25. Ms. Gilbert viewed the video of the camera near ARCH, admitted as State's Ex. 5, identified the place where she and Sean Jackson were sitting, stated that Jackson was wearing a red shirt, and described to the jury what was happening on the video as it was played in court. RR vol. 5, pp. 62-63.

Sean Jackson, who was incarcerated and serving a two year sentence for selling "kush" (synthetic marijuana, RR vol. 5, p. 87, l. 9-10), at time of trial, RR vol. 5, pp. 87-88, and who admitted using "kush" that night, RR vol. 5, p. 90, testified that he knew a person who goes by "NO," and identified

8

appellant Poree in court as "NO." RR vol. 5, pp. 83-84 and 91, l. 15-19.

Jackson admitted that something happened with "NO" on August 12, 2015 in front of the ARCH, with Jackson's hand being cut by "NO," who swung a razor which Mr. Jackson blocked with his arm. RR vol. 5, pp. 84-85. Jackson admitted that State's Ex. 2 was a photograph of him that from that time, and that State's Ex. 3 was a photograph of his injury. RR vol. 5, p. 84.

Jackson informed the jury that an ambulance took him to Brackenridge Hospital, where he was treated, and that he received stitches, but he did not remember how many. RR vol. 5, p. 86. Although Jackson used "kush" that night, he testified that it only made him high, and that it did not affect or "cloud" his memory. RR vol. 90-91.

After the State rested, RR vol. 5, p. 149, l. 5, and the defense rested without presenting any witnesses or evidence, RR vol. 5, p. 151, l. 17-25, both sides closed, and the jury was sent to the jury room prior to reading of the charge and closing argument. RR vol. 5, p. 152. With the jury outside the courtroom, appellant moved for a directed verdict arguing that the State had produced legally insufficient evidence that Mr. Poree knowingly or intentionally caused bodily injury, and that motion was denied. RR vol. 5, pp. 152-153.

The trial judge noted that he had some questions about whether sufficient evidence was presented to show that the box-cutter style knife was a deadly weapon, and appellant's trial counsel replied that he was not sure any evidence was presented that the knife was a deadly weapon or even used as a deadly weapon. RR vol. 5, p. 153, l. 8-12. The trial court asked if there were any medical reports stating that Jackson's injuries constituted serious bodily injury, and the prosecutor replied that there were none. RR vol. 5, p. 153, l. 14-25. The trial judge stated that ordinarily he would have expected some evidence from witnesses that the box-cutter style knife was capable of causing death or serious bodily injury, and the prosecutor admitted that this specific question was not asked to any witness. RR vol. 5, p. 154, l. 1-14. The prosecutor argued that State's Ex. 5, the video from the camera near the ARCH, presented enough evidence for a fact finder to determine whether the box-cutter style knife was a deadly weapon. RR vol. 5, p. 154, l. 15-25.

After a break was taken so that the parties could research this issue, with the trial judge identifying cases that he had found on this subject, RR vol. 5, p. 155, the prosecutor argued that the actual knife was in evidence, that State's Ex. 5 showed someone lunging at Jackson, and that there was a photograph of Mr. Jackson's injury and medical records on that injury, and

10

that all of this constituted sufficient evidence for the jury to determine whether a deadly weapon was used. RR vol. 5, pp. 156-157. There was further discussion, which included a review of the body camera video, State's Ex. 8, which shows the box-cutter style knife at 2:55, RR vol. 5, pp. 157-164, and the court noting that there was no evidence from any medical provider or person with knowledge concerning weapons whether this type of knife could be a deadly weapon. RR vol. 5, pp. 164-165. The trial court then decided that even though the evidence was "scant," it was sufficient for the jury to determine whether a deadly weapon was used, with the court noting that the blade was only 3/4 inch to one inch of cutting surface. RR vol. 5, p. 165.

After hearing closing arguments from both sides, RR vol. 5, pp. 168-185, the jury found appellant guilty of aggravated assault with a deadly weapon, and made an affirmative finding that a deadly weapon was used. RR vol. 5, p. 192, l. 4-18, and CR 92. The jury heard punishment evidence, and reached a punishment verdict of 45 years, with no fine, and found that three enhancement paragraphs were true. RR vol. 6, p. 47, l. 2-22, and CR 108.

The trial court's written judgment of conviction imposing a 45 year concurrent sentence, no fine and $284 in court costs, is at CR 110-112. The trial court's certification of defendant's right of appeal is at CR 102. Trial

11

counsel timely filed a notice of appeal. CR 122. This writer was appointed to represent appellant on appeal. CR 119.

## Summary of the Argument

The State presented legally insufficient evidence that the box-cutter style knife used in this offense was a deadly weapon capable of causing death or serious bodily injury. A knife is not a deadly weapon *per se*. The complainant's injury was a cut to his hand that required stitches, and he stayed less than two hours in the hospital. None of the police officers or other witnesses who testified at trial were asked if this type of knife could cause death or serious bodily injury. Nor was any medical testimony presented that on this subject. The medical records also do not contain any evidence showing that this injury was life-threatening.

Since the State failed to produce legally sufficient evidence that the box-cutter style knife used was a deadly weapon, the jury's finding should be reversed, and the deadly weapon finding should be removed from the trial court's judgment. The judgment should also be reformed to show the conviction is for assault only, since the aggravating factor – use or exhibition of a deadly weapon – was not supported by legally sufficient evidence. Since the 45 year sentence exceeds the punishment range for a class A

12

misdemeanor assault, this court should also remand this case to the trial court for a new punishment hearing within the class A enhanced misdemeanor range of 90 days to one year.

## Argument and Authorities

The deadly weapon finding was supported by legally insufficient evidence, and should be removed from the trial court's judgment, which would result in a conviction for assault only, and a new punishment hearing at the enhanced class A misdemeanor range of 90 days to one year.

## Standard of Review and Legal Authorities

In reviewing the legal sufficiency of the evidence to support a deadly weapon finding, the reviewing court considers the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of a deadly weapon finding beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A finding of legal insufficiency on one element of the offense requires reversal and entry of a judgment of acquittal. *Burks v. United States*, 437 U.S. 1 (1978). When the evidence is legally insufficient to support a deadly weapon finding, the appellate remedy is to reverse the deadly weapon finding and reform the judgment to omit that finding. *See, e.g., Cates v. State*, 102 S.W.3d 735, 738-739 (Tex. Crim. App. 2003), and *Murphy v. State*, No. 01-08-00768-CR

13

(Tex. App. – Houston [1ˢᵗ Dist.] 2010, pet. ref'd) (not designated for publication), at pdf slip op., p. 2, n. 1 and pp. 20-21.

The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). The reviewing court should not act as a thirteenth juror that substitutes its own opinion of the credibility and weight of the evidence for that of the fact finder. *Brooks v. State*, 923 S.W.3d 893, 905 (Tex. Crim. App. 2010). Instead, the reviewing court must resolve inconsistencies in testimony in favor of the verdict, and then ask whether a rational trier of fact could have found the elements of whether a deadly weapon was used was proven beyond a reasonable doubt. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Pen. Code § 22.01(a)(1). An assault becomes aggravated if the actor commits assault and uses or exhibits a deadly weapon during commission of the assault. Tex. Pen. Code § 22.02(a)(2). A "deadly weapon" is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen. Code § 1.07(a)(17)(B). "Serious bodily injury" is defined as "bodily injury that

14

creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Tex. Pen. Code § 1.07(a)(46). A knife is not a deadly weapon *per se*. Tex. Pen. Code § 1.07(a)(17)(A). *See also Limuel v. State*, 568 S.W.2d 309, 311 (Tex. Crim. App. 1978) ("An ordinary pocket knife is not manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury.").

The State does not have to show that the actor actually intended death or serious bodily injury to support a deadly weapon finding. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). The State must only show that a defendant used or intended to use the knife in a manner that was capable of causing death or serious bodily injury. *Id*. The State can use evidence about the knife's capacity to cause death or serious bodily injury, its size and shape, and its manner of use to establish that the knife is a deadly weapon without expert testimony. *Davidson v. State*, 602 S.W.2d 272, 273 (Tex. Crim. App. 1980). Factors courts may consider in determining whether a particular knife is a deadly weapon are: (1) the size, shape, and sharpness of the knife; (2) the manner of its use or intended use; (3) the nature or existence of inflicted wounds; and (4) any testimony of the knife's life threatening capabilities.

15

*Thomas v. State*, 821 S.W.2d 616, 619 (Tex. Crim. App. 1991).

In a case similar to the case at bar, the State confessed error, and the Court of Criminal Appeals reversed a conviction for assault with a deadly weapon, because the knife involved was not a deadly weapon *per se*, and it did not appear to become a deadly weapon from the manner of its use in that case. In *Garrett v. State*, 298 S.W.3d 945 (Tex. Crim. App. 1957), the appellant was convicted of aggravated assault with a deadly weapon arising out of a "fight at an establishment where drinking was in progress[.]" *Id.* The knife in that case had a "blade at its longest point of 3/4" in length." *Ibid.* The opinion stated:

> The injured party testified that he was treated at the hospital for about an hour, went home and went to bed, and was downtown the first thing the following morning.
>
> The doctor who treated him did not consider the wounds as serious ones if properly treated, that two of them were just through the skin, while the third was approximately two inches deep for a distance of four inches, and that they did not impair his capacity to "use his arms and get around."
>
> The instrument used was clearly not a deadly weapon *per se* and does not appear to have become one from the manner of its use.
>
> We have concluded that the evidence does not support the conviction for an assault with a deadly weapon. [Citations omitted].

16

*Ibid.* In the case at bar, Mr. Jackson was in the hospital less than two hours after receiving stitches for his injury, while the victim in *Garrett* was at the hospital for one hour. In the case at bar, there was no evidence, medical or otherwise, that showed his injury was capable of causing death or serious bodily injury, whereas in *Garrett*, the testimony from the treating doctor showed the injury was not serious, did not impair his ability to use his arms or get around, and was not life-threatening. The State failed to produce legally sufficient evidence that a deadly weapon was used in this offense.

This court considered whether evidence presented in another Travis County appeal was sufficient to show that a box-cutter style knife was a deadly weapon. In *Alexander v. State*, No. 03-10-00416-CR (Tex. App. – Austin 2011, pet ref'd) (not designated for publication), this court found that the evidence was sufficient to support this type of knife being a deadly weapon when two witnesses testified that it was capable of causing death or serious bodily injury. *Id.*, pdf slip op. at 8. There was no such testimony in this case, however,even though five police officers, as well as Mr. Jackson and Ms. Gilbert, who all testified at trial, could have been asked this question.

The cutting surface of the box-cutter style knife in this case was 3/4 inch to one inch. RR vol. 5, pp. 165, l. 13-14. There was no testimony of the

17

knife's life-threatening capabilities, or whether the injury was a "serious bodily injury" presented by any witness. Poree did make a slashing motion which can apparently be seen on State's Ex. 5, which resulted in a cut to Jackson's hand, requiring only stitches and a very brief hospital stay. On this record, the State produced legally insufficient evidence to show that the box-cutter style knife was a knife capable of causing death or serious bodily injury, which failed to support the jury's finding that a deadly weapon was used in this offense. As a result, this court should reverse the deadly weapon finding based upon legally insufficient evidence, and reform the judgment to remove the deadly weapon finding. Tex. R. App. P. 43.2(b). Additionally, since the only factor that converted this assault to an aggravated assault, use or exhibition of a deadly weapon, was supported by legally insufficient evidence, the judgment should be reformed to show that the offense of conviction is assault only, not aggravated assault with a deadly weapon, and the case remanded to the trial court for a new punishment range since the 45 year sentence exceeds the class A enhanced misdemeanor punishment range of 90 days to one year. Tex. Pen. Code § 12.43(a) and 22.01(b).

## Conclusion and Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, appellant ESAU POREE respectfully prays that this court sustain the issue presented, find that the evidence was legally insufficient to support the jury's deadly weapon finding, and reform the judgment to remove the deadly weapon finding, and to show that the offense of conviction is assault only, not aggravated assault with a deadly weapon.

Respectfully submitted,

/s/ *Gregory Sherwood*

GREGORY SHERWOOD
Attorney
P.O. Box 200613
Austin, Texas 78720-0613
(512) 484-9029
Email: gsherwood@mail.com
State Bar No. 18254600

Court-Appointed Attorney on
Appeal for Esau Poree

## Certificate of Service

I hereby certify that a true copy of this document was served on January 3, 2017 by email upon the Travis County District Attorney's Office, P.O. Box 1748, Austin, Texas 78767 at the following email address: AppellateTCDA@co.travis.tx.us.

/s/ *Gregory Sherwood*

19

## Certification of Word Count Compliance

According to the WordPerfect program used to create this document, there are 4,407 words in this brief, excluding the portions listed in Tex. R. App. P. 9.4(i)(1).

<u>/s/ *Gregory Sherwood*</u>