

# NUMBER 13-16-00651-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ROSENDO HERNANDEZ,                                   Appellant,

v.

THE STATE OF TEXAS,                                   Appellee.

### On appeal from the 214th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Hinojosa
### Memorandum Opinion by Justice Hinojosa

Appellant Rosendo Hernandez appeals from a judgment convicting him of one count of intoxication manslaughter, a second-degree felony, *see* TEX. PENAL CODE ANN. § 49.08 (West, Westlaw through 2017 1st C.S.), for the death of Andrew Botello, Hernandez's front passenger. Botello died after the vehicle Hernandez operated

collided with a vehicle driven by Esmeralda Marmolejo and then struck a cement pillar. In six issues, which we categorize as three broad issues each premised on two sub-issues, Hernandez complains that (1) the trial court erred by not (a) including the statutory language of article 18.06(b) of the Texas Code of Criminal Procedure in the jury charge, *see* TEX. CODE CRIM. PROC. ANN. art. 18.06(b) (West, Westlaw through 2017 1st C.S.), and (b) "taking judicial notice" of article 18.06(b); (2) the evidence is legally insufficient to support the jury's finding that (a) he used the motor vehicle as a deadly weapon, and (b) his intoxication caused Botello's death; and (3) his trial counsel provided ineffective assistance by failing to (a) request a *Franks* hearing[1] and (b) object to the State's offer of his hospital records, which contained references to his abuse of alcohol and marijuana. We affirm.

## I. BACKGROUND

At approximately 2:30 a.m. on August 16, 2015, Marmolejo exited S.P.I.D., a freeway, and approached an intersection on the frontage road. Contemporaneously, Gabriel Benivomonde was at a convenience store at the same intersection. Benivomonde recounted:

> I was pumping gas. I was with three other friends. They were walking inside to go pay. I heard a loud car, like an engine revving. It was going fast and [I] kind of turned and I seen [sic] a car coming from the distance and there was another car pulling up to the red light. It was a red light. There was another car pulling up to it and the car that was coming from a distance was going about 80 or 90 miles an hour and hit that other car from the back. That car did a half turn, ended up in the middle of the intersection and the car that hit the other car kept going and hit the cement pillar underneath the freeway.

---

[1] A "*Franks* hearing" is required by *Franks v. Delaware*, 438 U.S. 154 (1978), when a defendant attacks an affidavit used to support a warrant.

Benivomonde ran to check the driver of the vehicle that hit the cement pillar. He observed that the passenger, identified by law enforcement personnel as Botello, was not breathing. The driver, whom Benivomonde identified as Hernandez, smelled like alcohol and appeared intoxicated. Although Benivomonde found Hernandez in the driver's seat, Hernandez told Benivomonde that he had not been driving. When informed that the passenger was hurt, Hernandez told Benivomonde that he "couldn't do nothing, that was on him." Marmolejo testified that she recalled exiting S.P.I.D. and the next thing she remembered was someone helping her after the collision. She described the event as traumatic.

Gilberto Casas Jr., a Corpus Christi police officer, was dispatched to the accident scene. Casas encountered Hernandez still seated in the driver's seat, and he noticed Hernandez's breath had a strong odor of an alcoholic beverage, his speech was slurred, and his eyes were red, glazed over, and staring out. Hernandez and Botello were transported to the hospital where Botello died as a result of the injuries he sustained. Casas went to the hospital to continue his investigation. When Casas walked into Hernandez's hospital room, "it reeked of an alcoholic beverage." Hernandez refused to provide a blood specimen, but Casas obtained a warrant for one.

Sharla Hanke, a forensic scientist supervisor at the Texas Department of Public Safety Crime Laboratory in Corpus Christi, received the blood specimen drawn from Hernandez after the accident and, through analysis, determined that its blood-alcohol concentration (BAC) was 0.171 grams of alcohol per 100 milliliters of blood.

A grand jury indicted Hernandez on one count of intoxication manslaughter, a

3

second-degree felony, *see* TEX. PENAL CODE ANN. § 49.08, and a jury convicted him on that count.   The jury assessed punishment at ten years' confinement, and the trial court signed a judgment in accordance with the jury's verdict.   This appeal ensued.

## II. DISCUSSION

### A.   Texas Code of Criminal Procedure Article 18.06(b)

As part of Hernandez's first issue, he contends that the trial court erred by not including the statutory language of article 18.06(b) of the Texas Code of Criminal Procedure in the jury charge.   From Hernandez's arguments in the trial court, he contended that the law enforcement officials breached the requirements of article 18.06(b) and he wanted to emphasize that fact by instructing the jury on the article's requirements.   Article 18.06(b) provides:

> On searching the place ordered to be searched, the officer executing the warrant shall present a copy of the warrant to the owner of the place, if he is present.  If the owner of the place is not present but a person who is present is in possession of the place, the officer shall present a copy of the warrant to the person.   Before the officer takes property from the place, he shall prepare a written inventory of the property to be taken.  He shall legibly endorse his name on the inventory and present a copy of the inventory to the owner or other person in possession of the property.  If neither the owner nor a person in possession of the property is present when the officer executes the warrant, the officer shall leave a copy of the warrant and the inventory at the place.

TEX. CODE CRIM. PROC. ANN. art. 18.06(b).

In the trial court, Hernandez argued that two police officers and a blood technician admitted that no one presented him with the warrant used to obtain his blood sample to test for its alcohol content.   According to Hernandez, the requirements of article 18.06(b) constitute "law applicable to the case"; and under article 36.14, the trial court was

4

obligated to include the provisions of article 18.06(b) in the jury charge. *See id.* art. 36.14 (West, Westlaw through 2017 1st C.S.) (providing that the judge shall deliver to the jury a written charge distinctly setting forth the law applicable to the case). Hernandez posits that the omission of the provisions in article 18.06(b) harmed him because the jury had little or no legal context in which to apply the article 38.23 instruction included in the jury charge. *See id.* art. 38.23 (West, Westlaw through 2017 1st C.S.).[2]

Hernandez fails to reference—and we have not found—a case supporting his proposition that a jury charge should include the provisions in article 18.06(b). This absence may be because the requirements in article 18.06(b) are more properly addressed, at least in the first instance, through a motion to suppress. To that end, several courts have consistently held that ministerial violations of the search warrant statutes do not vitiate the search warrant in the absence of a showing of prejudice. *Robles v. State*, 711 S.W.2d 752, 753 (Tex. App.—San Antonio 1986, pet. ref'd) (citing *Pecina v. State*, 516 S.W.2d 401, 404 (Tex. Crim. App. 1974); *Phenix v. State*, 488

---

[2] Article 38.23 of the Texas Code of Criminal Procedure provides:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

TEX. CODE CRIM. PROC. ANN. art. 38.23 (West, Westlaw through 2017 1st C.S.).

S.W.2d 759, 766 (Tex. Crim. App. 1972); *Daltwas v. State*, 375 S.W.2d 732, 734 (Tex. Crim. App. 1964); *Rios v. State*, 623 S.W.2d 496, 499 (Tex. App.—Corpus Christi 1981, pet. ref'd)).

Hernandez fails to explain what prejudice he suffered from the officer's alleged failure to comply with article 18.06(b).  Therefore, article 18.06(b) is not "law applicable to the case."

Hernandez's first issue is overruled.[3]

## B.    Legal Sufficiency

In Hernandez's second issue, he challenges the legal sufficiency of the evidence supporting the jury's finding that he used the motor vehicle as a deadly weapon and that his intoxication was the cause of Botello's death.

### 1.    Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.).  The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony.  *Brooks*, 323 S.W.3d at 899; *Lancon v. State*, 253

---

[3] Because of our disposition of the first sub-issue in Hernandez's first issue, we need not address Hernandez's second sub-issue regarding the trial court's refusal to take judicial notice of article 18.06(b). *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

S.W.3d 699, 707 (Tex. Crim. App. 2008). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). We resolve any inconsistencies in the testimony in favor of the verdict. *Bynum v. State*, 767 S.W.2d 769, 776 (Tex. Crim. App. 1989) (en banc).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Id*.

### 2. Applicable Law Regarding Deadly Weapon

The Texas Penal Code defines "'[d]eadly weapon,'" in relevant part, as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17) (West, Westlaw through 2017 1st C.S.). "In order to sustain a deadly-weapon finding, the evidence must demonstrate that: (1) the object meets the definition of a deadly weapon; (2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and (3) other people were put in actual danger." *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014). "'Others' connotes individuals other than the actor himself, and danger to the actor alone does not meet the requisite standard of deadly-weapon use." *Id*. Additionally, "[o]bjects that are not usually considered dangerous weapons may become

so, depending on the manner in which they are used during the commission of an offense," and a "motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). The court of criminal appeals has explained:

> . . . the statute itself does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require appellant to intentionally strike another vehicle to justify a deadly weapon finding. The volume of traffic on the road is relevant only if no traffic exists. The plain language of the statute indicates that a deadly weapon finding will be sustained if the definition of a deadly weapon is met. Capability is evaluated based on the circumstances that existed at the time of the offense. The statute specifically pertains to motor vehicles, so a deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner.

*Id*. at 799 (internal citations omitted). The *Drichas* court provided this explanation on when a vehicle may be a deadly weapon before determining that the court of appeals did not properly employ a factual sufficiency review. The court of criminal appeals stated that the lower court "misconstrued the actual danger requirement by equating a deadly weapon's *capability* of causing death or serious bodily injury with its *probability* of doing [so], thus reading into the statute an additional requirement of evasive action or zone of danger." *Id*. 799–800 (emphasis in original). "Specific intent to use a motor vehicle as a deadly weapon is not required." *Id*. at 798. Further, when evaluating "the manner in which the defendant used the motor vehicle" and when determining whether a "defendant's driving was reckless or dangerous," we can consider, among other things, "(1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle." *Foley v. State*, 327 S.W.3d 907, 916

8

(Tex. App.—Corpus Christi 2010, pet. ref'd) (mem. op.).

### 3.    Analysis of Deadly Weapon Challenge

Hernandez's legal sufficiency challenge to the jury's deadly weapon finding is advanced by two arguments.    First, Hernandez argues:

> There are many things the record in this case does not reveal, including the cause of the accident, the condition of the roadway, what manner the driver was driving seconds before the collision, whether the driver applied brakes before the collision, whether the motor was still engaged when the accident occurred, or whether the airbag was deployed while Mr. Hernandez was driving on the highway before the impact with the pillar.

Hernandez references *Cates v. State*, 102 S.W.3d 735, 738–39 (Tex. Crim. App. 2003), in support of this argument.

Hernandez's reliance on *Cates* is misplaced.    In *Cates*, a driver struck a pedestrian, fatally wounding him, but continued driving down the roadway.    *Id.* at 736. Passers-by witnessed the vehicle leave the scene and gave chase.    *Id.*    One of the passers-by testified that the vehicle she rode in traveled between 85 to 90 miles an hour and that they caught up to the vehicle "fast," while the fleeing vehicle was stopped at a red traffic light.    *Id.* at 737.    A jury found the fleeing driver guilty of failing to stop and render aid and also found that the vehicle he drove had been used as a deadly weapon. *Id.*    In deeming the evidence supporting the deadly weapon finding legally insufficient, the court of criminal appeals found that the intermediate appellate court's focus on the testimony regarding the speed of the chase was misplaced.    *Id.* at 738.    Because the "chase" ended quickly, the reasonable inference was that the fleeing vehicle was traveling less, perhaps significantly less, than the chasing passers-by.    *Id.*    The court rejected the State's contention that facts occurring before the offense of failing to stop and render

9

aid—namely striking the pedestrian—established that the vehicle was "obviously a deadly weapon at that time."  *Id.* at 739.  It held that the fact that the fleeing vehicle was driven in a deadly manner before the offense could assist the fact-finder if it were coupled with other evidence of how the vehicle was driven during the offense.  *Id.*  In this case, Benivomonde testified that he heard an engine revving and witnessed Hernandez's vehicle traveling at "about 80 or 90 miles an hour" before the collision—not after.  *Cf. id.*

In Hernandez's second legal sufficiency argument, he contends that David Schwartz, a hit-and-run and fatality accident investigator with the Corpus Christi Police Department, misstated the law regarding a deadly weapon finding.  According to Hernandez, Schwartz told the jury he did not believe a person must have intent to use a weapon as a deadly weapon.  Our review of the record shows that, at most, Schwartz provided conflicting testimony.  On direct-examination by the State, Schwartz testified:

> Q.    Are you familiar with the legal definition of a deadly weapon?
>
> A.    I am.
>
> Q.    Okay.   And is your understanding that the legal definition of a deadly weapon includes anything that in the manner of its use or intended use is capable of causing death or serious bodily injury?
>
> A.    Yes, ma'am.

On cross-examination by Hernandez, Schwartz testified:

> Q.    Okay.  You would agree with me that someone has to have the intent to use something as a deadly weapon, correct?
>
> . . . .
>
> A.    Well, I've been through this before, but I would say, no, that you don't have to have the intent to use it as a deadly weapon.[4]

---

[4] We note that the statute, as presented to Schwartz by the State, is framed in the disjunctive—

Regardless of any potential inconsistency in Schwartz's testimony, from a legal sufficiency perspective, we must presume that the jury correctly followed that portion of the trial court's instructions that did correctly state the law.  *See Chaney v. State*, 314 S.W.3d 561, 567 n.8 (Tex. App.—Amarillo 2010 pet. ref'd) (citing *Kirsch v. State*, 306 S.W.3d 738, 748 n. 33 (Tex. Crim. App. 2010)).

Hernandez also faults part of Schwartz's testimony that Hernandez was speeding just prior to the collision with Marmolejo's vehicle as "merely a conclusion without support."   Hernandez follows this with a reference to his cross-examination of Kurt Russell, a police officer in the traffic division at the Corpus Christi Police Department.   As Russell was reviewing the electronic data recovered from the airbag system in Hernandez's vehicle, he testified:

Q.    In fact, this report says that there are at least two side impacts, right?

A.    Yes.

Q.    So with the side impact, that might indicate to you that someone hit something on the side of the vehicle and perhaps the way their vehicle went was relative to what they hit, right?

A.    Yes.

Q.    And that would be important to know because that might tell this jury whether, in fact, a person driving prudently hit something in the road and the way their car went was based on what they hit, right?

A.    Yes.

The testimony that Hernandez emphasizes is not the only evidence supporting the

"manner of its use" or "intended use."   Thus, intent applies to only one of the definition's subparts.   *See* Tex. Penal Code Ann. § 1.07(a)(17) (West, Westlaw through 2017 1st C.S.).

jury's deadly weapon finding.  The jury also heard from Benivomonde, as recounted above.  In addition to Benivomonde's recollection, the State offered and the trial court admitted photographs of Marmolejo's vehicle, showing extensive damage to its rear end, and Hernandez's vehicle, showing its hood wrapped around the cement pillar.

Given the evidence that was presented to the jury, *Cates* is damning to Hernandez's legal sufficiency challenge.  In this case, Benivomonde's testimony regarding Hernandez's vehicle "revving" and assessment of its speed coupled with the post-accident pictures are legally sufficient to support the jury's deadly weapon finding. *Cf. Cates*, 102 S.W.3d at 739 (holding that the fact that the fleeing vehicle was driven in a deadly manner before the offense could assist the fact-finder if it were coupled with other evidence of how the vehicle was driven during the offense). Moreover, Benivomonde's testimony regarding Hernandez's speeding and Casas's testimony regarding the odor of alcohol on Hernandez's breath, his slurred speech, and his glazed, red, staring eyes, touch on two of the factors we articulated in *Foley*.  *See* 327 S.W.3d at 916 (providing that intoxication and speeding are, among other things, two factors we can consider when evaluating "the manner in which the defendant used the motor vehicle" and when determining whether a "defendant's driving was reckless or dangerous").

### 4.    Applicable Law and Analysis Regarding Causation

A person commits the offense of intoxication manslaughter if the person operates a motor vehicle in a public place and is intoxicated and by reason of that intoxication causes the death of another by accident or mistake.   TEX. PENAL CODE ANN. § 49.08.   As for causation, the penal code provides that a person is criminally responsible if the result

12

would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. *Id.* § 6.04(a) (West, Westlaw through 2017 1st C.S.).

Hernandez's legal sufficiency challenge regarding causation is twofold. First, he suggests that Botello's failure to use his seatbelt may have been the proximate cause of his death. Second, Hernandez points only to the electronic data recovered from the airbag system in his vehicle for his argument that, "[t]he airbag deployed while Mr. Hernandez was driving on the freeway. The deployment of the airbag at an early stage may have caused the accident, as no one can drive safely with a deployed airbag." As we understand Hernandez, he posits that Botello's not wearing his seatbelt and the early deployment of the airbag, assuming such is true, were "concurrent causes" that were "clearly sufficient to produce" Botello's death and Hernandez's intoxication was "clearly insufficient."

Here, Casas testified that Hernandez's hospital room "reeked of an alcoholic beverage"; Benivomonde claimed Hernandez's vehicle was "going about 80 or 90 miles an hour" and he heard an engine revving; and Hanke testified that Hernandez's BAC was 0.171 at the time of its analysis. Considering all of this evidence in the light most favorable to the verdict, we conclude that a rational fact-finder could have found the element of but-for causation beyond a reasonable doubt. *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Hale v. State*, 194 S.W.3d 39, 40 & 44 (Tex. App.—Texarkana 2006, no pet.) (finding sufficient evidence of causation in testimony that

13

appellant was "flying" down the road with a BAC of .147 g/dL, and victim's conduct—stopping briefly—was not clearly sufficient to cause accident); *see also Hyland v. State*, No. 13-16-00596-CR, 2018 WL 1633487, at *12–13 (Tex. App.—Corpus Christi Apr. 5, 2018, pet. filed) (mem. op., not designated for publication) (finding sufficient evidence of causation based on a single-vehicle motorcycle accident where the jury implicitly found appellant to be the driver, his BAC was .175 g/dL, two eyewitnesses testified that the appellant was driving recklessly, and a police officer testified that motorcyclist's intoxication caused him to hit a curb while attempting to negotiate a curve at a high speed, sending the motorcycle into a skid and then a tumble); *Serrano v. State*, No. 14-05-00646-CR, 2007 WL 324606, at *2 (Tex. App.—Houston [14th Dist.] Feb. 6, 2007, no pet.) (mem. op., not designated for publication) (finding sufficient evidence of causation based on a single-car collision where appellant driver skidded off the road and killed his passenger, drank in the car, had a BAC of .12 g/dL, and was speeding, and there was no evidence of any obstacles in the road).

Hernandez's second issue is overruled.

## C. Ineffective Assistance of Counsel

### 1. Standard of Review and Applicable Law

To prevail on an ineffective assistance claim, appellant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be

14

ineffective." *Lopez*, 343 S.W.3d at 142. To satisfy the first prong, appellant must prove by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* To prove prejudice, appellant must show there is a reasonable probability the result of the proceeding would have been different, that is, a probability sufficient to undermine confidence in the outcome. *Id.*

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if appellant rebuts the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142. "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez*, 343 S.W.3d at 142; *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("Any allegation of ineffectiveness must be firmly rooted in the record[.]"). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When direct evidence is unavailable, we will assume counsel had a strategy "if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143. We must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Id.*

### 2. *Franks* Hearing

As part of Hernandez's third issue, he contends that his trial counsel was

15

ineffective for failing to request a *Franks* hearing. A "*Franks* hearing" is required by *Franks v. Delaware*, 438 U.S. 154 (1978), when a defendant attacks an affidavit used to support a warrant. Where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. *See Cates v. State*, 120 S.W.3d 352, 355 (Tex. Crim. App. 2003).

Hernandez argues that Casas misrepresented that Marmolejo identified him as the driver of the vehicle that struck the rear of her vehicle. Hernandez's cross-examination of Casas provides:

Q. All right. Now, in your search warrant, you indicate that you made contact with Ms. Marmolejo, correct?

A. Correct.

Q. And she identifies and says, "This is the guy who was driving the car", correct?

A. Correct.

. . . .

Q. And you base that, in your affidavit, you base that you're going to get your warrant, and one of the—one of the statements that must be in there is an affidavit from a witness, correct?

A. Correct.

Q. And that witness that you put in there was Ms. Marmolejo, correct?

A. Correct.

Q. All right. Who she told you that he's the guy who was driving and he's the guy who was driving the—

16

[STATE]:    I'm going to object, Your Honor. This—that's not what the report says.

[COURT]:    Overruled.

[STATE]:    And he's testifying.

[COURT]:    Cross.

[HERNANDEZ]:  Is that what happened?

A.    Correct.

Hernandez fails to direct us—and we have not found—the affidavit Casas executed in support of the search warrant. Because any allegation of ineffectiveness must be firmly rooted in the record, the omission of Casas' affidavit prevents us from engaging this ineffective assistance contention. *See Thompson*, 9 S.W.3d at 813.

### 3.    Medical Records

In the second part of Hernandez's ineffective assistance of counsel issue, he asserts that his trial counsel failed to object to the admission of approximately 3,904 pages of hospital records because they contained notations regarding Hernandez's history of alcohol and marijuana abuse. Hernandez references three specific types of statements contained in the hospital records. First, the "admission diagnoses" portion of Hernandez's hospital records notes, "11. Ethanol and marijuana abuse" after ten other diagnoses, such as "right hip dislocation." This section is repeated approximately eight times in the hospital records. Second, Hernandez references a statement contained in the "assessment and plan" section providing, "Alcohol abuse: Per the patient's wife, he drinks occasionally for a CAGE score of 0. He does smoke marijuana every day. We

17

will continue to monitor him for signs of alcohol withdrawal." This statement appears once. Third, Hernandez references two laboratory reports. One, dated August 16, 2015, notes "224" for ethanol but negative for cannabinoids. The second notes that the specimens taken to test for ethanol and cannabinoids were drawn on August 16, 2015.

Assuming, without deciding, that the failure to object to the admission of the medical records on 404(b) grounds by Hernandez's trial counsel fell below an objective standard of reasonableness, we cannot say that such performance prejudiced Hernandez's defense. *See Strickland*, 466 U.S. at 689; *see also* TEX. R. EVID. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The evidence was contained in approximately 3,904 pages of hospital records and the record does not show that such evidence was highlighted by the State.

Hernandez's third issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
31st day of May, 2018.